[Cite as *Espy v. Interstate Food Serv., L.L.C.*, 2017-Ohio-4366.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| ROBERT ESPY, | : | |
| Plaintiff-Appellant, | : | CASE NO. CA2016-10-199 |
| | : | O P I N I O N |
| - vs - | | 6/19/2017 |
| | : | |
| INTERSTATE FOOD SERVICE LLC, et al., | : | |
| Defendants-Appellees. | : | |


CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2015-06-1399


O'Connor, Acciani & Levy LPA, Dennis E. Mahoney, Robert B. Acciani, 600 Vine Street, Suite 1600, Cincinnati, Ohio 45202, for plaintiff-appellant

Green & Green, Jane M. Lynch, Sean P. McCormick, 800 Performance Place, 109 North Main Street, Dayton, Ohio 45402-1769, for defendant-appellee, Interstate Food Service LLC

Freund, Freeze & Arnold, Gordon D. Arnold & Nicole A. Mitchell, Fifth Third Center, One South Main Street, Suite 1800, Dayton, Ohio 45402, for defendant-appellee, Owners Insurance Co.

Smith, Rolfes & Skavdahl Co., LPA, Jerome F. Rolfes, Andrew J. Weber, 600 Vine Street, Suite 2600, Cincinnati, Ohio 45202, for defendant, Stephen Isaac, Jr.


**RINGLAND, J.**

{¶ 1}   Plaintiff-appellant, Robert Espy, appeals the decision of the Butler County Court

of Common Pleas, granting summary judgment in favor of Defendants-appellees, Interstate

Food Services LLC ("Interstate") and Owners Insurance Company. For the reasons detailed below, we reverse the decision of the trial court and remand for further proceedings.

{¶ 2} The record before this court does not provide a precise image of Interstate's business, but the pertinent facts can be gleaned from the record. Interstate was a company engaged in the sale of meat products, including steaks, seafood, chicken, and pork. Interstate's general manager testified that a typical customer may be "small mom & pop grocery stores," and "organizations like FOP, Eagles," or even individual consumers. Interstate has since gone out of business.

{¶ 3} Interstate owned a number of vehicles and claimed to hire independent contractors to deliver meat products to their customers. Interstate would set the base price for the product and then, according to Interstate, they would allow their drivers to sell the product at a higher price. Beyond those basic facts, however, the record is very limited. Interstate claims that they exercised no control over the drivers or their routes.

{¶ 4} Stephen Isaac, the individual defendant in this case, worked in some capacity for Interstate and Interstate's predecessor corporation, Buckeye Food Distributors, Inc. ("Buckeye"). The parties dispute whether Isaac was an independent contractor or an employee.

{¶ 5} Pertinent to this case, Robert Espy was injured in an automobile accident when he collided with a vehicle driven by Isaac. Isaac did not have a driver's license and thus did not maintain any automobile insurance coverage. Isaac's vehicle, however, was owned by Interstate and insured by a policy issued by Owners Insurance.

{¶ 6} On June 16, 2015, Espy filed an action against Isaac, Interstate, and the Ohio Bureau of Workers' Compensation seeking damages for personal injuries sustained as a result of the accident.[1] Espy alleged that Isaac was an employee or agent of Interstate at the

---

1. The Bureau was later realigned as a party plaintiff.

time of the accident and further alleged that Interstate negligently hired and retained Isaac and negligently entrusted its vehicle to Isaac.

{¶ 7} Owners Insurance moved to intervene in the action and sought declaratory judgment that they had no duty to defend or indemnify. Both Interstate and Owners Insurance argued that Isaac was an independent contractor.

{¶ 8} Interstate moved for summary judgment and the trial court determined that Isaac was an independent contractor and Interstate did not negligently entrust the vehicle to Isaac. Therefore, the trial court granted summary judgment in favor of Interstate. In several subsequent entries, the trial court also granted Owners Insurance summary judgment, finding no duty to defend or indemnify based on the previous findings. In a final entry, the trial court ordered Civ.R. 54(B) final appealable order language. This matter is now appropriate for appellate review. Espy raises a single assignment of error:

{¶ 9} THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR APPELLEES INTERSTATE AND OWNERS.

{¶ 10} In his sole assignment of error, Espy argues the trial court erred by granting summary judgment in favor of Interstate and Owners Insurance. This court reviews summary judgment decisions de novo, which means we review the trial court's judgment independently and without deference to the trial court's determinations, using the same standard in our review that the trial court should have employed. *Ludwigsen v. Lakeside Plaza, L.L.C.*, 12th Dist. Madison No. CA2014-03-008, 2014-Ohio-5493, ¶ 8. Pursuant to Civ.R. 56(C), summary judgment is appropriate when (1) there is no genuine issue of any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence submitted can only lead reasonable minds to a conclusion which is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-70 (1998).

{¶ 11} The moving party bears the initial burden of informing the court of the basis for

the motion and demonstrating the absence of a genuine issue of material fact. *Robinson v. Cameron*, 12th Dist. Butler No. CA2014-09-191, 2015-Ohio-1486, ¶ 9. Once this burden is met, the nonmoving party has a reciprocal burden to set forth specific facts showing there is some genuine issue of material fact yet remaining for the trier of fact to resolve. *Id.* In determining whether a genuine issue of material fact exists, the evidence must be construed in favor of the nonmoving party. *Vanderbilt v. Pier 27, L.L.C.*, 12th Dist. Butler No. CA2013-02-029, 2013-Ohio-5205, ¶ 8.

{¶ 12} Appellant argues that the trial court erred in its decision granting summary judgment to Interstate by finding that Isaac was an independent contractor because there was evidence in the record that Isaac was an employee. Appellant also argues that Interstate is liable because Isaac was "an agent" of Interstate and alternatively alleges that Isaac had express or implied authority to drive the vehicle. Appellant's complaint includes damages based on theories of respondeat superior, negligence, and negligent entrustment. Following review, we agree that Interstate has not met its initial burden demonstrating the absence of a genuine issue of material fact. Therefore, summary judgment was not appropriate.

{¶ 13} "Whether someone is an employee or an independent contractor is ordinarily an issue to be decided by the trier of fact." *Bostic v. Connor*, 37 Ohio St.3d 144 (1988), paragraph one of the syllabus. However, "where the evidence is not in conflict or the facts are admitted, the question of whether a person is an employee or an independent contractor is a matter of law to be determined by the court." *Brown-Spurgeon v. Paul Davis Sys. of Tri-State Area*, 12th Dist. Clermont No. CA2012-09-069, 2013-Ohio-1845, ¶ 19.

{¶ 14} Whether one is an employee or an independent contractor depends on the facts of each case. *Touhey v. Ed's Tree & Turf, LLC*, 194 Ohio App.3d 800, 2011-Ohio-3432, ¶ 10 (12th Dist.). The key factual determination in making such a finding "is who had

the right to control the manner or means of doing the work." *Bostic*, 37 Ohio St.3d at paragraph one of the syllabus. This inquiry is fact-intensive and requires the consideration of a number of factors, none of which are dispositive by themselves. *Id.* at 146. As noted by the Ohio Supreme Court, in making such a determination, "the factors to be considered include, but are certainly not limited to, such indicia as who controls the details and quality of the work; who controls the hours worked; who selects the materials, tools and personnel used; who selects the routes traveled; the length of employment; the type of business; the method of payment; and any pertinent agreements or contracts." *Id.*

{¶ 15} Generally, a principal is not liable for the acts of an independent contractor. *Strayer v. Lindeman*, 68 Ohio St. 2d 32, 34 (1981). However, one's status as an independent contractor does not render the employer impermeable to all liability. *Jackson v. Hogeback*, 12th Dist. Butler No. CA2013-10-187, 2014-Ohio-2578, ¶ 18, fn. 2.

{¶ 16} Under a theory of negligent entrustment, "'[t]he owner of a motor vehicle may be held liable for an injury to a third person upon the ground of negligence if the owner knowingly, either through actual knowledge or through knowledge implied from known facts and circumstances, entrusts its operation to an inexperienced or incompetent operator whose negligent operation results in the injury.'" *Hundemer v. Partin*, 12th Dist. Clermont No. CA2007-01-006, 2007-Ohio-5631, ¶ 6, quoting *Gulla v. Straus*, 154 Ohio St. 193 (1950), paragraph three of the syllabus. In order to be successful on a claim under the theory of negligent entrustment, the plaintiff must show that the vehicle was driven with the permission and authority of the owner, the driver was in fact an incompetent driver, and that the owner knew that the time he entrusted the vehicle that the driver had no driver's license, or that he was incompetent or unqualified to drive, or had knowledge of such facts and circumstances that would imply knowledge of the incompetency on the owner of the vehicle. *Id.*; *Hoff v. Minder*, 4th Dist. Washington No. 13CA31, 2014-Ohio-3491, ¶ 13.

{¶ 17} The trial court's decision was based on the deposition testimony of Isaac and William Rucker, Interstate's office manager. Isaac testified that he was an independent contractor for Interstate. Isaac stated that he was required to report to Interstate's office at a certain time in the morning in order to use an Interstate vehicle to service accounts. While Isaac stated that he had full control of his route, he also stated that he was obligated to return the Interstate vehicle at a certain time and therefore had a defined work period.

{¶ 18} While we again reiterate that the business practices of Interstate are extremely vague, Interstate also introduced the testimony of its general manager, Rucker. Rucker testified that all Interstate drivers were independent contractors who received a 1099 tax form from the company and had previously signed an agreement stating that they were not employees of the company, but rather independent contractors. While Rucker could not produce a copy of the agreement between Interstate and Isaac, he referenced such an agreement between Isaac and Interstate's predecessor, Buckeye. Rucker stated that he "assumed" Isaac signed a new contract with Interstate.

{¶ 19} The trial court considered this testimony and found that Isaac was an independent contractor. Specifically, the trial court found:

> Through the depositions of Stephen Isaac and William Rucker, the office manager of Interstate at the time of the accident, [Interstate] demonstrated that while [it] set the hours Isaac was to work, [Isaac] controlled most of the other aspects of his job. Isaac, paid his own taxes, had discretion not only to service his existing accounts, but also how to open and control new accounts. Isaac was free to determine where he was going to travel and how he sold products. Additionally, Isaac entered into a contract with the predecessor to Interstate that provided he agreed that he was an independent contractor and not an agent or employee of the company.
>
> * * *
>
> Regarding Plaintiff's claim that Defendant Interstate negligently entrusted Isaac with a vehicle it owned, the record is replete with indications that not only did Interstate make it clear that Isaac was not to drive one of its vehicles, as he did not have a driver's

license, but that Isaac knew as such [sic].

> Construing the facts most strongly in favor of Plaintiff, the non-moving party, the Court finds no questions of material fact remain and that Isaac was acting as an independent contractor and not only did he not have permission to use a vehicle owned by Interstate, but he knew that he was not permitted to drive one of its vehicles. As such, the Court finds Defendant Interstate Food Service, LLC's *Motion for Summary Judgment* well-taken.

{¶ 20} Based on our review, we conclude that summary judgment was not appropriate. We will first address appellant's argument that Interstate gave Isaac express or implied permission to drive the Interstate vehicle and negligently entrusted the vehicle.

{¶ 21} While Isaac and Rucker both gave the appearance that Interstate was emphatic that Isaac was not authorized to drive the vehicle, there are multiple inconsistencies in their respective testimonies. It is undisputed that Isaac did not have a driver's license and his driver's license had been suspended for several years. Both Isaac and Rucker testified that, although Isaac did not have a license, he could still work the vehicle and sell meat products if he had someone to drive him around. Sometimes Isaac would have his daughter drive the vehicle, and other times Isaac would have John Jobe drive the vehicle. Although Rucker did not know it at the time, because he failed to conduct background checks, Jobe also did not have a license.

{¶ 22} Despite the company policy that Rucker testified about, approximately one month before the accident, Isaac was issued a speeding ticket while driving an Interstate vehicle and the vehicle was impounded. Following the vehicle impound, Rucker claimed that he was "emphatic" that Isaac was not permitted to drive any Interstate vehicle. Isaac similarly claims that he was warned not to drive the Interstate vehicles.

{¶ 23} According to Rucker, on Saturday June 15, Jobe was given the vehicle with Isaac as the passenger. Jobe was supposed to return the vehicle to Interstate by 5:00 p.m., but failed to do so. This was particularly concerning to Rucker because he could not reach

Jobe and if the driver is not back by close time, Rucker perceived that "ninety-nine percent of the time they're doing bad things." In communications between Rucker and Isaac, Rucker testified that Isaac said Jobe had the vehicle. Nevertheless, Rucker testified that he had a gut feeling that Isaac would not have given the truck up to Jobe. Rucker explained that he had that belief because "that's the type of person he is. He would not give up the truck."

{¶ 24} Thereafter, Rucker testified that he went looking for Jobe "at all his usual haunts" because he "never" had a residence. By Monday June 17, Rucker had still not located the vehicle. That day Isaac sent Rucker a text message that he was "in forensics." Rucker stated that he wasn't sure what "forensics" meant, but he "knew he had a doctor's appointment. He was trying to get disability for being nuts." Between Monday and Tuesday, Rucker continued to contact Isaac through phone calls and text messages in order to locate the truck. Again, Rucker could not get in contact with Jobe because Jobe didn't have a phone and "doesn't live at a residence."

{¶ 25} Rucker was convinced that Isaac had the vehicle because "he's not going to let [Jobe] have it and he's not coming in so he has to have a way to generate income. He's got the truck. There's no doubt in my mind." Prior to 10:00 a.m. on June 18, Rucker exchanged phone calls and text messages with Isaac. Isaac responded that he was in Middletown and Rucker understood that Isaac was on his way to Interstate. At 10:30 a.m., Rucker texted Isaac "[w]here are you dude" and 15 minutes later texted "[c]ome on [Isaac] whats up man just sitting here with my thumb up my b***" [sic]. That was the final exchange indicated in the record prior to the accident.

{¶ 26} Though both Isaac and Rucker represent that Isaac had no authority to drive the vehicle, there is a question of fact that should be determined by a trier of fact. The record reveals that Rucker knew that Isaac did not have a license and had a history of continuing to operate Interstate vehicles. Just one month prior to the accident, the Interstate vehicle driven

by Isaac was impounded because Isaac was ticketed and did not have a license. Although Rucker claimed that there was an alternative arrangement for a substitute driver, Rucker "knew" that Isaac had the truck through the weekend, but nevertheless ordered Isaac, on multiple occasions, to return the vehicle. Based on the uncertainty in the testimony and conflicts in the record, there is a genuine issue of material fact as to whether Isaac had express or implied authority to return the vehicle to Interstate immediately prior to the accident on June 18.

{¶ 27} Furthermore, given the state of the record before this court, we find there is a genuine issue of material fact as to whether Isaac was an independent contractor or an Interstate employee at the time of the accident.[2] While Isaac and Rucker testified about a number of factors that weigh in favor of a finding that Isaac was an independent contractor, there is evidence to support a contrary position. Therefore, this issue is more appropriately resolved by a trier of fact. For example, the use of 1099 forms may be relevant evidence of independent contractor status. However, there are other facts that tend to suggest that there was an employee-employer status. The record reflects that Interstate controlled the company vehicles and took responsibility for necessary maintenance. In addition, Rucker claims that Isaac signed an agreement certifying his status as an independent contractor. However, the alleged agreement was never received in evidence. The agreement signed by Isaac was between Isaac and Buckeye, not Interstate.

{¶ 28} Although Interstate expressly denies that it had any control over the routes of its drivers, there was evidence that Interstate designated the time that Isaac could work and controlled the hours worked. Rucker testified that Interstate opened at 9:30 a.m. and closed

---

2. We note that Espy did not initially respond to Interstate's motion for summary judgment and alleged that he did not receive a copy of the motion and was thus unaware. This court takes no position on that claim, but notes the limited evidence for appellate review. Espy's failure to respond, in this instance, is not dispositive because we found that Interstate did not meet its initial burden of proof.

at 7:30 p.m. during the week and closed at 5:00 p.m. on Saturday. There was "no leeway" on the hours. In addition, there was evidence that Rucker acted as the boss and had authority over Interstate drivers, and that Interstate would guarantee a $50 payment for the services of a replacement driver.[3] Taken as a whole, there are indicia that an employee-employer relationship existed between Isaac and Interstate. Accordingly, we believe the issue is best resolved by a fact-finder. Appellant's sole assignment of error is sustained.

{¶ 29} Because it was error to grant summary judgment in favor of Interstate, we likewise find that summary judgment in favor of Owners Insurance was improper. Therefore, we also find that it was error to grant summary judgment in favor of Owners Insurance on its duty to defend or indemnify.

{¶ 30} Judgment reversed and remanded.

HENDRICKSON, P.J., and PIPER, J., concur.

---

3. However, we also note that Rucker himself claimed to be an independent contractor for Interstate. When asked about his compensation, Rucker claimed that he was "more or less a volunteer" and only did the job to offer assistance to his ex-wife.