[Cite as *Cowguill v. Hall*, 2024-Ohio-6062.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |  |
|---|---|---|---|
| CORBIN COWGUILL, et al., | : | | |
| Appellants, | : | | CASE NO. CA2024-07-044 |
| | : | | O P I N I O N |
| - vs - | | | 12/30/2024 |
| | : | | |
| JESSICA HALL, | : | | |
| Appellee. | : | | |

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 23 CV 96188

Thomsen Law Group, LLC, and Denis E. Blasius, for appellants.

Hoffer Law, LLC, and Tyler J. Hoffer, for appellee.

**HENDRICKSON, J.**

{¶ 1} Appellants, Corbin and Judy Cowguill ("the Cowguills"), appeal from the decision of the Warren County Court of Common Pleas granting summary judgment in favor of Jessica Hall.[1] For the reasons detailed below, we affirm the decision as modified.

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this case from the accelerated calendar and place it on the regular calendar for purposes of issuing this opinion.

## I. Factual Background

**{¶ 2}** Jessica and her former husband, Chad Hall, owned a home located at 952 Camargo Court, Lebanon, Ohio ("Property"). In December 2021, Jessica and Chad separated and filed for divorce. Pursuant to the terms of the divorce decree, Jessica retained the Property but was required to refinance the home and pay Chad his portion of the equity. Jessica had trouble securing a loan and so the Cowguills, Jessica's mother and stepfather, agreed to provide her with the financing.

**{¶ 3}** The parties entered into an oral agreement. According to the affidavits and deposition testimony, the parties agreed on the financial terms of the agreement:

- The Cowguills would take a mortgage on their own home in the amount of approximately $160,000.

- The Cowguills would pay $30,000 to Chad pursuant to the terms of the divorce decree and $130,000 to First National Bank for payment of the mortgage on the Property.

- The Property would be transferred from Chad and Jessica's names into Jessica's name, and then to Jessica and the Cowguills' names.

- Jessica would pay the sum of $826.89 per month for a period of five years.

- At the end of the five years, Jessica would either refinance the Property into her own name or sell the Property.

- Jessica was required to pay all insurance and real estate taxes on the Property.

The parties dispute whether other non-financial terms were a part of the oral agreement. For instance, the Cowguills claim that the oral agreement included a term that only Jessica and her children were allowed to reside at the Property.

**{¶ 4}** On June 2, 2023, the Cowguills filed a complaint seeking to partition the

Property and have it sold at auction. The Cowguills alleged that they were tenants in common with Jessica and demanded partition based upon a suggestion that Jessica had breached the terms of the oral agreement. In pertinent part:

> 7. Pursuant to an oral agreement between [the Cowguills] and [Jessica], [the Cowguills] expended funds to compensate [Jessica's] former spouse for his interest in the Property and to pay off the then existing mortgage against the Property.
>
> 8. In exchange for these funds, [Jessica] agreed to give [the Cowguills] an interest in the Property, make payments on the expended funds, maintain insurance on the Property and pay any outstanding real estate taxes and assessments against the Property.
>
> 9. As of the date of the filing of this action, [Jessica] owes [the Cowguills] the sum of $153,535.24 for the funds expended on her behalf for her obligations to her former spouse and to pay the existing mortgage against the Property.
>
> 10. Despite numerous requests, [Jessica] has not provided [the Cowguills] with evidence that the Property remains insured, and that all real estate taxes and assessments have been paid to date.

Jessica answered the complaint and asserted a counterclaim for declaratory judgment seeking a declaration that the Cowguills "do not have a present ownership interest in the Property; rather, they have an equitable mortgage."[2]

{¶ 5} Throughout the ensuing litigation, the Cowguills made additional claims that Jessica breached the terms of the oral agreement by (1) failing to properly maintain the Property, (2) allowing her girlfriend to move in, and (3) failing to have her automobile refinanced by her father. The parties appeared for depositions. The Cowguills did not dispute that Jessica provided the necessary $826.89 monthly payments but insisted that

---

2. Jessica also filed a counterclaim for breach of contract alleging the Cowguills breached the terms of the agreement by interfering with her interest in and right to possession of the Property. The trial court granted summary judgment in favor of the Cowguills on that claim after finding Jessica presented no evidence to support her claims. Jessica did not appeal the trial court's decision.

Jessica had violated the terms of the oral agreement in other ways, i.e., by allowing her girlfriend to move into the Property. Jessica acknowledged that her girlfriend had moved in but denied such a condition was a part of the oral agreement. Instead, Jessica suggested her mother and stepfather simply did not approve of the relationship, which led to the conflict.

{¶ 6} As to the Cowguills' claim they were tenants in common with Jessica, the record reveals that, consistent with the terms of the oral agreement, Jessica signed a quitclaim deed conveying the Property to herself and the Cowguills. Judy Cowguill testified that the Cowguills did not intend any "ownership" of the Property to be permanent. She testified that the agreement was intended to last a maximum of five years to give Jessica time to improve her credit and get a better job. Judy agreed the Property would be reconveyed to Jessica if she adhered to the terms of the agreement. Corbin Cowguill similarly testified that his and Judy's interest in the Property was not intended to be permanent "[a]s long as [Jessica] adhered to the agreement." In their joint affidavit, the Cowguills averred:

> According to the terms of the Agreement, the funds given to [Jessica] were given to purchase a 2/3 interest in the Property. *Upon fully performing all of the terms and conditions of the Agreement, we would reconvey our interest in the Property back to [Jessica].*

(Emphasis added).

{¶ 7} The parties filed cross motions for summary judgment. The magistrate granted summary judgment in favor of Jessica finding that the Cowguills did not obtain an ownership interest in the Property permitting partition. Instead, the magistrate determined that an equitable mortgage was created between the parties to ensure the repayment of debt. The magistrate also set forth the terms of the agreement and made an additional finding that the Cowguills were not entitled to foreclose on the Property after

concluding there was "no evidence either party has breached a term of the oral agreement/equitable mortgage between them." The Cowguills filed objections. The trial court overruled the objections and adopted the magistrate's decision. Consistent with the magistrate's decision, the trial court set forth the terms of the agreement, concluded that Jessica had not "breached any essential term of the agreement," and provided the circumstances in which the Cowguills could seek foreclosure:

> An equitable mortgage exists between the parties, the terms of which are that Defendant Jessica Hall must pay to Plaintiffs Corbin and [Judy] Cowguill the sum of $826.89 per month for a period of five years beginning in March 2022 and ending in March 2027. At the end of the five-year period, Defendant must repay the full loan amount to Plaintiffs by refinancing the Property, selling the Property, or by other means. Should Defendant successfully repay the loan in full by the end of the five years, Plaintiffs must reconvey their interest in the Property—secured by the equitable mortgage—to Defendant. Should Defendant not repay the loan in full by the end of the five years, or should Defendant miss any payment under the loan, Plaintiffs have the full right to foreclosure as contemplated by Ohio law on mortgages.

The Cowguills now appeal, raising five assignments of error for review.

## II. Assignments of Error

Assignment of Error No. 1:

THE TRIAL COURT ERRED IN APPLYING THE SUMMARY JUDGMENT STANDARD TO THE RECORD AND FACTS OF THE CASE WHEN IT FOUND (I) THAT THERE ARE NO DISPUTED ISSUES OF MATERIAL FACT RELEVANT TO THE DETERMINATION THAT THE COWGUILLS' OWNERSHIP INTEREST IN THE PROPERTY IS ACTUALLY AN EQUITABLE MORTGAGE, AND (II) THAT THERE ARE NO ISSUES OF MATERIAL FACTS AS TO THE TERMS OF THE PURPORTED AGREEMENT.

Assignment of Error No. 2:

THE TRIAL COURT ERRED IN FINDING THAT COWGUILLS' OWNERSHIP INTEREST IN THE PROPERTY IS ACTUALLY AN EQUITABLE MORTGAGE.

Assignment of Error No. 3:

THE TRIAL COURT ERRED IN DETERMINING THE EXISTENCE OF AN ENFORCEABLE AGREEMENT BETWEEN THE PARTIES.[3]

Assignment of Error No. 4:

THE TRIAL COURT ERRED IN MAKING AN ACTUAL FINDING OF THE MATERIAL TERMS OF AN AGREEMENT RELATED TO AN EQUITABLE MORTGAGE.

Assignment of Error No. 5:

THE TRIAL COURT ERRED BY GOING BEYOND THE SCOPE OF THE CROSS MOTIONS TO DETERMINE NOT ONLY THAT PLAINTIFFS WERE MERELY MORTGAGE HOLDERS, BUT ALSO THAT THERE WERE NO GROUNDS FOR FORECLOSURE OF THE EQUITABLE MORTGAGE.

### III. Appeal

**{¶ 8}** The Cowguills' assignments of error contain repetitive and overlapping arguments that will be addressed collectively. On appeal, the Cowguills argue the trial court erred by granting summary judgment in favor of Jessica after finding that the Cowguills have an equitable mortgage on the Property. The Cowguills also maintain the trial court erred by setting the terms of the oral agreement/equitable mortgage thereby denying the Cowguills claims that other non-financial terms were a part of the agreement, such as the claimed prohibition on other persons residing on the Property.

### A. Standard of Review

**{¶ 9}** This court reviews summary judgment decisions de novo, which means we review the trial court's judgment independently and without deference to the trial court's

---

3. We note, in their third assignment of error, the Cowguills assert a muddled argument that there was no enforceable agreement because "the parties do not agree on the essential terms of same." Therefore, the Cowguills maintain that the trial court should only consider the deed and not the circumstances surrounding the transaction. However, this argument is disingenuous as the Cowguills have repeatedly agreed that they entered into an oral agreement with Jessica regarding the financing of the Property. Moreover, the trial court was well within its right to consider Jessica's argument that the signing of the quitclaim deed was not intended as an outright transfer of the Property, but rather an equitable mortgage.

determinations, using the same standard in our review that the trial court should have employed. *Ludwigsen v. Lakeside Plaza, L.L.C.*, 2014-Ohio-5493, ¶ 8 (12th Dist.). Pursuant to Civ.R. 56(C), summary judgment is appropriate when (1) there is no genuine issue of any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) the evidence submitted can only lead reasonable minds to a conclusion which is adverse to the nonmoving party. *Espy v. Interstate Food Serv., L.L.C.*, 2017-Ohio-4366, ¶ 10 (12th Dist.).

{¶ 10} The moving party bears the initial burden of informing the court of the basis for the motion and demonstrating the absence of a genuine issue of material fact. *Robinson v. Cameron*, 2015-Ohio-1486, ¶ 9 (12th Dist.). Once this burden is met, the nonmoving party has a reciprocal burden to set forth specific facts showing there is some genuine issue of material fact yet remaining for the trier of fact to resolve. *Id.* In determining whether a genuine issue of material fact exists, the evidence must be construed in favor of the nonmoving party. *Vanderbilt v. Pier 27, L.L.C.*, 2013-Ohio-5205, ¶ 8 (12th Dist.).

### B. Partition Action

{¶ 11} The right to obtain a partition of property by judicial proceedings is governed by R.C. Chapter 5307. *Ellis v. Iesulauro*, 2008-Ohio-4726, ¶ 11 (12th Dist.). Under that statute, a tenant in common, survivorship tenant, or coparcener (joint heir) may file a petition in the common pleas court seeking partition of real estate. R.C. 5307.01 and 5307.03. "If the court of common pleas finds that the plaintiff . . . has a legal right to any part of the estate, it shall order partition of the estate in favor of the plaintiff or all interested parties, appoint one suitable disinterested person to be the commissioner to make the partition, and issue a writ of partition." R.C. 5307.04.

{¶ 12} A "mortgage" has been defined as "[a] conveyance of title to property that

is given as security for the payment of a debt or the performance of a duty that will become void upon payment or performance according to the stipulated terms." *Balfour v. Haymon*, 2021-Ohio-3499, ¶ 34 (10th Dist.), citing *Black's Law Dictionary 1001* (9th Ed.2009). An "equitable mortgage" is "[a] transaction that has the intent but not the form of a mortgage and that a court of equity will treat as a mortgage." *Id.* "If a person transfers property by deed absolute to his creditor as security for a debt with the mutual understanding that such property will be reconveyed by the creditor on the repayment of the debt, a court of equity will consider such a deed a mortgage." *Swanbeck v. Sheaves*, 1986 Ohio App. LEXIS 5819, *8 (6th Dist. Mar. 7, 1986). Accordingly, under Ohio law, a deed intended to secure performance of an obligation may be treated as an equitable mortgage whether or not such interest is disclosed by the instrument. *Balfour* at ¶ 34.

{¶ 13} In this case, the undisputed facts show that Jessica needed money to refinance the Property and pay her ex-husband his portion of the equity. The Cowguills agreed to advance the money for a period of five years after which Jessica would either refinance the Property in her own name or sell the Property. Though the Cowguills insist that additional, non-financial terms were included as part of the oral agreement, it is undisputed that the Cowguills agreed to reconvey their interest in the Property once the "terms" of the agreement were met. Both Judy and Corbin Cowguill provided deposition testimony to that effect and further averred:

> According to the terms of the Agreement, the funds given to [Jessica] were given to purchase a 2/3 interest in the Property. *Upon fully performing all of the terms and conditions of the Agreement, we would reconvey our interest in the Property back to [Jessica]*.

(Emphasis added). Thus, the undisputed evidence shows that Jessica's transfer of the Property via quitclaim deed was not a transfer of the Property but an equitable mortgage securing the loan. *See Kaeser v. Gross*, 2002-Ohio-4050 (1st Dist.) (conveyance of

property was not a sale outright, but an equitable mortgage).

{¶ 14} As a result, we find the trial court did not err by concluding the Cowguills had no legal right to partition the Property, as they held only an equitable mortgage. In other words, the Cowguills were not a "tenant in common, survivorship tenant, or coparcener" as provided in R.C. Chapter 5307 and had no legal right to partition the Property. *See Malone v. Malone*, 119 Ohio App. 503, 506 (4th Dist. 1963) (bank, as mortgagee, could not maintain an action in partition). Therefore, we find the trial court did not err by granting summary judgment in favor of Jessica on the Cowguills' complaint for partition and on Jessica's counterclaim for declaratory judgment on the equitable mortgage.

### C. Terms of the Oral Agreement/Equitable Mortgage

{¶ 15} After the trial court ruled that the Cowguills could not maintain the partition action, the trial court set forth the terms of the oral agreement/equitable mortgage and made an additional finding that the Cowguills were not entitled to foreclose on the Property. The trial court did so after concluding Jessica "has not yet breached any essential term of the agreement."

{¶ 16} However, these additional determinations, i.e., the terms of the oral agreement/equitable mortgage and whether the Cowguills were entitled to foreclosure, were issues not properly before the court. The Cowguills' complaint only asserted one cause of action, namely, a partition action. A partition action, as opposed to a foreclosure action, is not dependent upon the breach of a condition or agreement between the parties. Rather, the issue is whether "the plaintiff . . . has a legal right to any part of the estate." R.C. 5307.04. Therefore, once the trial court determined that the Cowguills had no legal right to partition the Property, the trial court did not need to set forth the terms of the oral agreement/equitable mortgage because the Cowguills did not file a foreclosure action

where the terms of the oral agreement/equitable mortgage could be litigated. Therefore, we vacate these additional determinations made by the trial court and take no position as to whether or not the Cowguills would prevail on the merits of a foreclosure action.

## IV. Conclusion

{¶ 17} Upon review of the evidence, we find the trial court did not err by granting summary judgment in favor of Jessica and concluding that the Cowguills held an equitable mortgage on the Property. However, we vacate the trial court's decision setting forth the "essential" terms of the "oral agreement/equitable mortgage" and addressing whether or not the Cowguills are entitled to foreclosure.

{¶ 18} Accordingly, for the reasons set forth above, the Cowguills' first and fifth assignments of error are sustained in part and overruled in part. Their second assignment of error is overruled. The Cowguills' third assignment of error is overruled for the reasons set forth in footnote 3. The Cowguills' fourth assignment of error is sustained. In all other respects, the trial court's decision is affirmed.

{¶ 19} Judgment affirmed as modified.

BYRNE, P.J., and M. POWELL, J., concur.