[Cite as *Balfour v. Haymon*, 2021-Ohio-3499.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Debora K. Balfour, | : | |
| Plaintiff-Appellee, | : | No. 20AP-323 |
| | | No. 20AP-327 |
| v. | : | (C.P.C. No. 19CV-5884) |
| Joseph V. Haymon et al., | : | (ACCELERATED CALENDAR) |
| Defendants-Appellants. | : | |

D E C I S I O N

Rendered on September 30, 2021

**On brief:** *Hrabcak & Company*, *L.P.A.*, *Michael Hrabcak*, and *Gregory A. Wetzel*, for appellee. **Argued:** *Gregory A. Wetzel.*

**On brief:** *O'Reilly Law Offices*, and *Michael J. O'Reilly*, for appellant Joseph V. Haymon. **Argued:** *Michael J. O'Reilly.*

APPEALS from the Franklin County Court of Common Pleas

JAMISON, J.

{¶ 1} Defendants-appellants, Joseph V. Haymon, Fenwick and Associates LLC, and Bungaplex LLC, appeal from two separate judgments issued by the Franklin County Court of Common Pleas, in favor of plaintiff-appellee, Debora K. Balfour. For the reasons that follow, we reverse.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} There is no dispute that on or about September 12, 2014, Balfour and Haymon entered into an agreement whereby Balfour provided certain funds to Haymon, in return for Haymon's promise to perform certain renovations to real property owned by an Ohio limited liability company known as Fenwick and Associates, LLC ("Fenwick"). Fenwick

is wholly owned and operated by Haymon.[1]  The subject real property is located at 410 East 15th Avenue, Columbus, Ohio.

{¶ 3}   On April 26, 2017, Fenwick executed a quit-claim deed ("Balfour deed"), purporting to transfer all of Fenwick's ownership interest in real property to Balfour for the sum of $25,000.  The Balfour deed, attached to Balfour's complaint as Exhibit B, was not recorded until August 29, 2017.

{¶ 4}   There is no dispute that on that same date, August 29, 2017, Fenwick also executed a quit-claim deed ("Bungaplex deed"), purporting to transfer an ownership interest in the same real property to an Ohio limited liability known as Bungaplex LLC ("Bungaplex"), in consideration of the sum of $25,000.  Bungaplex is also wholly owned and operated by Haymon.  The quit-claim deed was recorded on August 29, 2017.

{¶ 5}   On July 19, 2019, Balfour filed an 11 count complaint against Haymon, Fenwick, and Bungaplex.  According to Balfour's complaint, she loaned Haymon or his entities a total of $143,000 for the renovation project, but Haymon and his entities never completed the renovations as promised.  The complaint sought a declaration as to the validity of the competing deeds to the property and an order of ejectment against Haymon. The remaining counts alleged fraud, conversion, breach of contract, slander of title, lis pendens, civil theft, unjust enrichment, and promissory estoppel.  The allegations of the complaint specific to the claims for declaratory judgment are as follows:

> 17. At the time of the Bungaplex Deed, Defendant Fenwick no longer had any rights, title, or interest in the Subject Property; it had already conveyed those to Plaintiff Balfour.
>
> 18. The Bungaplex Deed was fraudulent and is void on its face.
>
> 19. There is a real and justiciable controversy that exists as to the validity of the Balfour Deed, the invalidity of the Bungaplex Deed, and the ownership of the Subject Property; and speedy relief is necessary for the preservation of Plaintiff Balfour's rights and interests in the Subject Property.
>
> 20. Plaintiff Balfour's rights and interest in the Subject Property may be otherwise lost or impaired if Defendants continue to be in possession and act as owner of the Subject Property.

---

[1] A copy of the quit-claim deed memorializing the transfer of ownership from Cheryl M. Fenwick to Fenwick is attached to Balfour's complaint as Exhibit A. The quit- claim deed was executed on August 5, 2014 and recorded September 12, 2014.

21. Plaintiff Balfour respectfully requests the Court declare the Balfour Deed to be valid, declare the Bungaplex Deed to be invalid, declare Plaintiff Balfour is the owner of the Subject Property in fee simple absolute, and order the transfer of the Subject Property to Plaintiff Balfour.

{¶ 6} Appellants' answer contains the following admissions and denials:

17. This Defendant denies the allegations contained in Complaint Paragraph 17.

18. This Defendant denies the allegations contained in Complaint Paragraph 18.

19. This Defendant in response to Complaint Paragraph 19 admits that a declaratory judgment is needed as the parties disagree on many issues but Defendant disagrees on what the Court should declare.

20. This Defendant denies the allegations contained in Complaint Paragraph 20.

21. This Defendant in response to Paragraph 21 of the Complaint states that a declaratory judgment is needed as the parties disagree on many issues, but Defendant disagrees with Plaintiff's assertion as to what the Court should declare.

{¶ 7} On February 7, 2020, Balfour filed a motion for judgment on the pleadings, pursuant to Civ.R. 12(C), on her claims for declaratory relief and ejectment. On March 3, 2020, appellants filed a response wherein appellants claimed that it was the parties understanding that the Balfour deed was executed as security for the funds she advanced for renovations. The trial court issued a decision and entry on March 16, 2020, granting Balfour's motion for judgment in the pleadings. The trial court made the following determination as to the claim for declaratory relief:

Due to the conveyance in the Balfour Deed, Defendant Fenwick had no interest in the Subject Property to later convey to Defendant Bungaplex. The Balfour Deed quit-claimed the entire subject property to Plaintiff Balfour "together with all the improvements thereon and appurtenances thereunto belonging." Ex. B. The only reservation is mineral rights. Thus, the property rights at issue in this case were deeded to Plaintiff Balfour.

Moreover, Defendant Haymon and Fenwick, as the grantor of the deed, are bound by the deed under the doctrine of estopple by deed. Defendant Haymon and Fenwick are bound by the Balfour Deed's provisions and are "estopped to deny their

> legal effect." * * * Thus, Defendants have no grounds to deny the Subject Property was conveyed to Plaintiff Balfour.
>
> Based on the above analysis, The Balfour Deed is superior to the Bungaplex Deed because Defendant Fenwick had no interest to subsequently convey in the Bungaplex Deed, and Defendants are estopped from denying the conveyance to Plaintiff Balfour.

(Mar. 16, 2020 Decision & Entry at 4-5.)

{¶ 8} The trial court went on to issue the following ruling on the ejectment action:

> As shown in declaratory judgment analysis, Plaintiff Balfour has a legal estate in the real property and a possessory right through the Balfour Deed. The identity of the real property has been established with certainty in the Balfour Deed and Plaintiffs Complaint which provided the Subject Property's physical address and Franklin County Permanent Parcel Number. Defendants have kept Plaintiff Balfour from possessing the real property by Defendant Haymon residing at the Subject Property when he has no legal right to do so. Thus, the statutory requirements have been satisfied and Plaintiff Balfour is entitled to judgment on the pleadings.

(Decision & Entry at 6.)[2]

{¶ 9} On May 14, 2020, the trial court granted appellants' May 13, 2020 motion to stay execution of the ejectment. On May 18, 2020, Balfour filed a motion, pursuant to Civ.R. 41(A)(2), seeking an order dismissing the remaining claims in her complaint, without prejudice. The trial court granted Balfour's motion on May 19, 2020 and dismissed Balfour's remaining claims against appellants, without prejudice.

{¶ 10} Appellants timely appealed to this court from the two judgments issued by the trial court. On June 23, 2020, this court issued a journal entry consolidating case Nos. 20AP-323 and 20AP-327 "for purposes of * * * oral argument, and determination." Accordingly, we shall determine both cases in a single decision.

## II. ASSIGNMENTS OF ERROR

{¶ 11} Appellants assigns the following as trial court error:

ASSIGNMENT OF ERROR NO. 1

THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT IN GRANTING APPELLEE JUDGMENT ON

---

[2] The trial court concluded that the pleadings left no doubt as to deliver and acceptance of the Balfour deed. That finding is not the subject of this appeal.

THE PLEADINGS WHEN DEFENDANT HAD PLED AFFIRMATIVE DEFENSES THE APPELLEE NEITHER ADDRESSED NOR RESOLVED.

ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ERRED IN ALLOWING PLAINTIFF TO USE A MOTION TO DISMISS, TO DISMISS LESS THAN ALL CLAIMS INCLUDED IN THE COMPLAINT.

ASSIGNMENT OF ERROR NO. 3

THE TRIAL COURT ERRED IN NOT CONSTRUING THE AFFIRMATIVE DEFENSES ASSERTED BY DEFENDANT AS COUNTERCLAIMS, WHEN ALLOWING PLAINTIFF TO DISMISS HER REMAINING CLAIMS.

ASSIGNMENT OF ERROR NO. 4

THE TRIAL COURT ERRED IN SUMMARILY GRANTING PLAINTIFF'S MOTION TO DISMISS SOME BUT NOT ALL COUNTS, WITHOUT DUE PROCESS.

ASSIGNMENT OF ERROR NO. 5

THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING JUDGMENT ON THE PLEADINGS ON EJECTMENT WHEN THE DEED IN QUESTION SHOULD HAVE BEEN CONSTRUED AS A MORTGAGE.

## III.  STANDARD OF REVIEW

{¶ 12}  "A party may file a motion for judgment on the pleadings under Civ.R. 12(C), '[a]fter the pleadings are closed but within such time as not to delay the trial.' " *Carasalina, LLC v. Smith Phillips & Assocs.*, 10th Dist. No. 13AP-1027, 2014-Ohio-2423, ¶ 8, quoting *Franks v. Ohio Dept. of Rehab. & Corr.*, 195 Ohio App.3d 114, 2011-Ohio-2048, ¶ 5 (10th Dist.)  "In ruling on a motion for judgment on the pleadings, the court is permitted to consider both the complaint and answer." *Carasalina* at ¶ 8, citing *State ex rel. Midwest Pride IV, Inc. v. Pontious,* 75 Ohio St.3d 565, 570 (1996).  *See also State ex rel. Fiser v. Kolesar,* ___ Ohio St.3d ___, 2020-Ohio-5483, ¶ 8.  When presented with such a motion, a trial court must construe all the material allegations of the pleadings as true, and must draw all reasonable inferences in favor of the nonmoving party. *Peterson v. Teodosio*, 34 Ohio St.2d 161, 165 (1973); *Whaley v. Franklin Cty. Bd. of Commrs.*, 92 Ohio St.3d 574, 581 (2001).  A motion for judgment on the pleadings must "be granted when, after viewing the allegations and reasonable inferences therefrom in the light most favorable to the non-

moving party, the moving party is entitled to judgment as a matter of law." *Brown v. Wood Cty. Bd. of Elections*, 79 Ohio App.3d 474, 477 (6th Dist.1992), citing *Peterson* at 174.

{¶ 13} "There is little caselaw discussing the standard of review of judgment on the pleadings initiated by the plaintiff, but presumably it would involve the same type of considerations used in resolving a defendant's motion for judgment on the pleadings: judgment in favor of the plaintiff would be appropriate if (1) the trial court construes the material allegations in the complaint and the answer in favor of the nonmoving party, and (2) finds beyond doubt that the defendant could prove no set of facts to support any defense to the claims in the complaint." *Trinity Health Sys. v. MDX Corp.*, 180 Ohio App.3d 815, 2009-Ohio-417, ¶ 18 (7th Dist.). Thus, a party seeking affirmative relief would employ Civ.R. 12(C) "where the opposing party had admitted to all the salient facts of the complaint, thereby admitting liability, and has no arguable defense." *Id.*

{¶ 14} The questions presented by a motion for judgment on the pleadings are purely legal. *Kolesar* at ¶ 8. A judgment on the pleadings dismissing an action is subject to a de novo standard of review in the court of appeals. *Carasalina* at ¶ 8, citing *RotoSolutions, Inc. v. Crane Plastics Siding, LLC,* 10th Dist. No. 13AP-1, 2013-Ohio-4343, ¶ 13, citing *Franks* at ¶ 5.

## IV. LEGAL ANALYSIS

### A. Preliminary Issues

### 1. Standing

{¶ 15} Balfour concedes that Haymon has standing to appeal from the order of ejectment due to his possessory interest in the real property at issue. Balfour has not moved this court to dismiss the appeal from the March 16, 2020 judgment. Balfour argues, however, that Haymon does not have standing, in his individual capacity, to appeal from the declaratory judgment issued by the trial court on March 16, 2020, because only Fenwick and Bungaplex have claimed an ownership interest in the real property at issue.

{¶ 16} As a general rule, only a party aggrieved by a trial court's judgment has standing to appeal. *Midwest Fireworks Mfg. Co., Inc. v. Deerfield Twp. Bd. of Zoning Appeals*, 91 Ohio St.3d 174 (2001). A party is "aggrieved" if it has an interest in the subject matter of the litigation that is "immediate and pecuniary" rather than "a remote consequence of the judgment." *Id.* at 177.

{¶ 17}  An action to quiet title to real property is governed by R.C. 5303.01, which provides in relevant part that "[a]n action may be brought by a person in possession of real property, by himself or tenant, against any person who claims an interest therein adverse to him, for the purpose of determining such adverse interest."  The pleadings establish that Haymon and Bungaplex are in possession of the real property subject to the competing claims of ownership in this case.  Thus, Haymon is aggrieved by the declaratory judgment and he has standing, in his individual capacity, to appeal from the March 16, 2020 judgment.  *See Catley v. Boles*, 11th Dist. No. 2019-G-0198, 2020-Ohio-240 (Administrator had standing to maintain a quiet title action because the complaint alleged that the administrator and the decedent resided on and have been in possession of the property.).

{¶ 18}  Even if we were to conclude that Haymon does not have standing to personally appeal from the declaratory judgment, we find that Fenwick and Bungaplex are also appellants in this case.  The notices of appeal filed in this case are captioned as follows:

> DEBORA KAY BALFOUR,
> Plaintiff Case No. 19CV005884
> Vs.
> JOSEPH VIRGIL HAYMON, et.al.,
> Defendants

{¶ 19}  App.R. 3(D) provides that the "notice of appeal shall specify the party or parties taking the appeal."  Here, the captions contain the "et al." designation, but the text of the notices identify only Haymon as appellant.

{¶ 20}  In *Transamerica Ins Co., v. Nolan*, 72 Ohio St.3d 320 (1995), the notice of appeal designated the appellants as "Dennis Wallace et al."  *Id.* at 321.  The court of appeals held that the notice failed to comply with App.R. 3(D), and dismissed the appeal of Linda Wallace. The Supreme Court of Ohio held that the court of appeals abused its discretion by refusing to consider the appeal of Linda Wallace.  *Id.* at 322.  In so holding the Supreme Court noted that the only jurisdictional requirement for a valid appeal under App.R. 3(A) is the timely filing of a notice of appeal.  *Id.*  Thus, when presented with other defects in the notice of appeal, a court of appeals is vested with discretion to determine whether sanctions, including dismissal are warranted.  *Id.*  *See also Grand Council of Ohio v. Owens*, 86 Ohio App.3d 215, 219 (10th Dist.1993) (This court advised that the better practice is to name all the parties appealing rather than simply using "et al." designation.).

{¶ 21} As previously noted, Haymon is the sole member of both Fenwick and Bungaplex. When an issue of party identification arose in the trial court, the parties filed the following stipulation:

> On or about November 21, 2019, Defendant Joseph Virgil Haymon filed an Answer to Plaintiff Debora Balfour's Complaint. While the Answer was captioned "Answer of Defendant Joseph Virgil Haymon," it was intended to serve as an answer on behalf of Defendant Bungaplex LLC and Defendant Fenwick Associates LLC, too.
>
> Thus, the parties stipulate and agree that the Answer filed on November 21, 2019 shall inure to Defendant Bungaplex LLC and Defendant Fenwick Associates LLC. Those parties have appeared and answered Plaintiff Balfour's Complaint and are not in default.

(Feb. 3, 2020 Stipulation.)

{¶ 22} Because the parties in this action have acknowledged that Haymon has the capacity to file pleadings, motions, memoranda and other papers in behalf of Fenwick and Bungaplex, and because Balfour has previously stipulated that Haymon may do so without specifically identifying Fenwick and Bungaplex in the caption, we perceive no prejudice to Balfour in treating Fenwick and Bungaplex as appellants. Balfour has not claimed that their arguments in response to the assignments of error would be different had Haymon specifically identified Fenwick and Bungplex as appellants in either notice of appeal.

{¶ 23} For the foregoing reasons, we find that Haymon, Fenwick, and Bungaplex are appellants in these coordinated cases.

### 2. Balfour's Motion to Strike

{¶ 24} Balfour's seeks an order striking "Section I" of appellants' merit brief and the appendix to the merit brief on the grounds that the evidentiary material in the appendix and the factual assertion in the merit brief "were not before the trial court." (Nov. 24, 2020 Mot. to Strike at 3.) In her merit brief, Balfour states that such facts were not "part of the record before the trial court when it rendered any of its relevant decisions." (Appellee's Merit Brief at 8.) On November 25, 2020, this court issued a journal entry stating that "[a]ppellee's November 24, 2020 motion to strike portions of appellant's brief shall be submitted to the

court at such time as the court determines the merits of these appeals." The motion is now ripe for a ruling.

{¶ 25} It is axiomatic that " ' "[a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." ' " *JPMorgan Chase Bank, N.A. v. Liggins*, 10th Dist. No. 15AP-242, 2016-Ohio-3528, ¶ 14, quoting *Wiltz v. Clark Schaefer Hackett & Co.,* 10th Dist. No. 11AP-64, 2011-Ohio-5616, ¶ 13, quoting *Morgan v. Eads*, 104 Ohio St.3d 142, 2004-Ohio-6110, ¶ 13, quoting *State v. Ishmail*, 54 Ohio St.2d 402 (1978), paragraph one of the syllabus. To the extent that Balfour's motion to strike pertains to the evidentiary materials attached as an appendix to appellants' merit brief and certain factual assertions in their merit brief that are not contained in the pleadings, we agree that those materials and assertions were not part of the record when the trial court ruled on the March 16, 2020 judgment, and they shall not be considered in our review of that judgment.

{¶ 26} We disagree, however, with Balfour's contention that none of the factual assertions in Section I of appellants' brief are part of the record in this appeal. The record shows that on May 18, 2020, the same day Balfour filed her Civ.R. 41(A)(2) motion, Haymon filed a "motion to refer to magistrate for mediation." Haymon's May 7, 2020 affidavit was attached as an exhibit to the motion.[3] Thus, the averments in Haymon's May 7, 2020 affidavit were part of the trial court record when the trial court ruled on Balfour's

---

[3] The affidavit reads in relevant part as follows:

2. I am residing at said real estate. At the moment I am the only person residing there. The property requires up to $15,000 in work at a minimum, before it would have a certificate of occupancy allowing others to be able lawfully to live there.

3. If I vacate the property, given the character of the neighborhood, it will almost certainly be broken into and vandalized or be taken over by squatters

4. As I have an interest in preserving the value of the property and am not charging for my protective or construction services I submit it is in the best interest of both the Plaintiff, Deborah Balfour as well as the Defendant(s) in this action that I be allowed to remain in occupancy for the time being pending the arrival of this case at a final appealable order (as well as in the pendency of an appeal if there should be one).

5. I will explain this further in a longer affidavit but I wish to inform the Court that the deed I gave to Deborah Balfour was expressly understood between us to be a security instrument for the repayment of money to her and was not understood by either of us to be an absolute deed fully transferring ownership.

6. Deborah and I had a contract, or partnership, or loan agreement regarding the property referenced above and a property at 3104 Twin Circle Street, Moore, Oklahoma 73160. Deborah was to be the money "partner" and I the "work partner". Deborah breached the agreement by withholding the final $15,000 needed to finish the Ohio property and by maliciously thwarting a sale we had arranged of the Oklahoma property. (Defs.' Ex. A, attached to May 18, 2020 Mot. to Refer.)

Civ.R. 41(A)(2) motion to dismiss and we shall consider those averments in our review of the May 19, 2020 judgment only.

{¶ 27} For the foregoing reasons, the motion to strike is granted, in part, as to the appendix and the relevant portions of Section I in appellants' merit brief.

### B. Assignments of Error

{¶ 28} In order to facilitate the analysis of this appeal, we shall consider the assignments of error out of order.

### 1. Appellants' First and Fifth Assignments of Error

{¶ 29} Appellants first and fifth assignments of error pertain to the March 16, 2020 judgment, and we shall consider them jointly. In the first and fifth assignments of error appellants argue the trial court erred in declaring the validity of the competing deeds and ordering Haymon's ejectment without considering the affirmative defenses pleaded by appellants and without considering whether the facts alleged in the pleadings permit the inference that the Balfour deed was a mortgage.

### a. Declaratory Judgment

{¶ 30} Appellants contend that the trial court erred in granting judgment on the pleadings because the pleadings give rise to a factual issue whether the parties intended the Balfour deed as a mortgage. We agree.

{¶ 31} Appellants first contend that the trial court erred by failing to recognize that Fenwick executed the Balfour deed for the sole purpose of securing appellants' performance of the renovation contract and recoupment of the loan proceeds. The material factual allegations in the complaint are as follows:

> 7. Plaintiff Balfour, a friend of Defendant Haymon, agreed to loan monies for Defendant Haymon and/or his entities to use to renovate the Subject Property.
>
> 8. *Specifically, Plaintiff Balfour loaned Defendant Haymon and/or his entities additional sums for a total of $123,173.00 with the promise that said funds would be utilized to renovate the kitchen and bathroom, among other things, at which point the Subject Property would be sold for a profit, with the loaned funds being returned to Plaintiff Balfour, with interest.*
>
> 9. Additionally, Plaintiff Balfour assisted and co-signed a commercial loan with Defendant Haymon for an additional

$20,000, the proceeds of which were to be used exclusively for to improve the Subject Property.

10. *Defendant Haymon was to repay said loan himself.*

11. To date, Defendant Haymon has made no payments on the loan. Plaintiff Balfour has made all payments due on the loan.

* * *

14. Recently, Plaintiff Balfour ascertained the $123,173.00 she loaned to Defendant Haymon and his entities, plus the $20,000 commercial loan proceeds, had not been utilized to renovate the Subject Property as promised. Instead, upon information and belief, Defendant Haymon and his entities wrongfully converted the funds for their own personal use while Defendant Haymon was living at the Subject Property.

(Emphasis added.)

{¶ 32} The answer contains the following admissions and denials relative to the material allegations set forth above:

7. This Defendant admits the allegations contained in Complaint Paragraph 7 are correct in a general way.

8. *This Defendant admits Plaintiff made a loan for purposes as described, but the amount of the loan and terms and conditions of it are uncertain.*

9. This Defendants denies the allegations contained in Complaint Paragraph 9 for lack of information.

10. This Defendant denies the allegations contained in Complaint Paragraph 10 for lack of information.

11. This Defendant denies the allegations in Complaint Paragraph 11 for lack of information.

14. This Defendant denies the allegations contained in Complaint Paragraph 14.

(Emphasis added.)

{¶ 33} Appellants argue that the Balfour deed should be construed as a mortgage in light of Balfour's admission that the property was conveyed in connection with the party's renovation agreement. We agree.

{¶ 34} A "mortgage" has been defined as "[a] conveyance of title to property that is given as security for the payment of a debt or the performance of a duty that will become void upon payment or performance according to the stipulated terms." *Black's Law*

*Dictionary* 1001 (9th Ed.2009). An "equitable mortgage" is "[a] transaction that has the intent but not the form of a mortgage and that a court of equity will treat as a mortgage." *Black's Law Dictionary* 1002 (9th Ed.Rev.2009). " 'If a person transfers property by deed absolute to his creditor as security for a debt with the mutual understanding that such property will be reconveyed by the creditor on the repayment of the debt, a court of equity will consider such a deed a mortgage, though an innocent purchaser for value from the creditor can cut off the equitable rights of the debtor.' " *Swanbeck v. Sheaves,* 6th Dist. No. L-85-237, 1986 Ohio App. LEXIS 5819, 8-9 (Mar. 7, 1986*), quoting Black's Law Dictionary* 483 (5th Ed.Rev.1980). Accordingly, under Ohio law, a deed intended to secure performance of an obligation may be treated as an equitable mortgage whether or not such interest is disclosed by the instrument. *See Swanbeck. See also Dietl v. Sipka,* 185 Ohio App.3d 218, 2009-Ohio-6225, ¶ 21 (11th Dist.), fn. 3 ("In *Swanbeck,* the trial court concluded the parties had an equitable mortgage because appellant had an agreement to 'reconvey the land upon payment of [an] outstanding debt.' ").

{¶ 35} Ohio is a notice-pleading state. Under the notice pleading rules of the Ohio Rules of Civil Procedure, "[a]ll pleadings shall be so construed as to do substantial justice." Civ.R. 8(F). A party "is not required to prove his or her case at the pleading stage." *York v. Ohio State Hwy. Patrol,* 60 Ohio St.3d 143, 145 (1991). "Very often, the evidence necessary for a [party] to prevail is not obtained until [that party] is able to discover materials in the [opposing party's] possession." *Id.*

{¶ 36} Appellants admitted Balfour made a loan to Haymon or his entities for the specific purposes described in the complaint, but appellants have asserted that "the amount of the loan and terms and conditions of it are uncertain." (Answer at ¶ 8.) Appellants have also denied that Balfour provided appellants with $123,173 pursuant to the renovation contract, denied that Haymon was to repay the loan himself, and denied Balfour's allegations regarding the commercial loan, for lack of knowledge. No documents corroborating Balfour's allegations were submitted with the complaint, other than the deeds in question. Appellants have also denied Haymon used funds provided by Balfour for purposes other than the agreed upon renovations to the subject real property. In our view, construing the pleadings in appellants' favor, we find sufficient facts have been pleaded to create a genuine factual issue whether Fenwick executed the quit-claim deed to Balfour as

security either for appellants' performance of the renovation contract and recoupment of loan proceeds or repayment of the loan by Haymon. Thus, the pleadings permit an inference that the parties intended to create an equitable mortgage.

{¶ 37} Appellants asserted the following affirmative defenses in their answer: laches; waiver; *estoppel*; failure of a meeting of the minds; unclean hands; and "plaintiff is the party in breach of contract not defendant." (Emphasis added.) (Answer at 7.) When construed in appellants' favor, the pleadings permit the inference that the Balfour deed and renovation agreement obligated Balfour to reconvey the property either to a third-party purchaser on appellants' completion of the renovation work and recoupment of the loan proceeds, or to Haymon on repayment of the loan. Appellants have alleged in their answer that Balfour is the party in breach the agreement, not appellants. (Answer at 7.) Accordingly, there is a triable issue of fact whether Balfour's breach of the renovation contract extinguished Balfour's title.[4]

{¶ 38} The trial court found that the doctrine of estoppel by deed precluded Fenwick from denying that it conveyed an ownership interest to Balfour. The trial court noted that "[T]he equitable doctrine of 'estoppel by deed' * * * precludes a party from denying a certain fact recited in a deed executed by or accepted by him in an action brought upon the instrument." *37 Robinwood Assoc. v. Health Industries, Inc.*, 47 Ohio App.3d 156, 158 (10th Dist.1988), citing 42 Ohio Jurisprudence 3d, Estoppel and Waiver, Section 4, at 10 (1983)

---

[4] We disagree with Balfour's contention that appellants waived any argument based upon the existence of an equitable mortgage by failing to raise the issue in the trial court. In appellants March 3, 2020 memorandum contra Balfour's motion for judgment on the pleadings, appellants made the following argument:

"Plaintiff herself creates doubt as to the facts. She admits that the Balfour Deed was given to her after she had made $123,000 in loans to Defendants for use in improving the subject property * * * which allows for an inference the deed was really a badly drawn mortgage which Plaintiff accepted only as collateral. * * *.

* * *

* * * Defendants made their own contrary averments of fact to Plaintiffs assertions in their Answer. In Answer paragraph 12 they pled their disagreement as to what Plaintiff's state of mind was in taking receipt of the Balfour Deed, i.e., whether she was accepting it as a title conveyance or an amateur mortgage. * * *.

* * *

On the ejectment count, the Court would first have to determine whether Plaintiff owns the fee simple estate and as shown above, there is doubt whether Plaintiff received the Balfour deed as a conveyance of title, or as collateral for loan, also known as a mortgage."
(Mar. 3, 2020 Memo. Contra at 3-4.)

and *Cleveland Boat Serv., Inc. v. Cleveland,* 102 Ohio App. 255,. 557 (8th Dist.1955), paragraph two of the syllabus.

{¶ 39}   In our view the trial court mistakenly applied the doctrine in favor of Balfour, as "[i]t is a well-established principle that a mere quitclaim deed, without covenants of warranty, does not estop the grantor from showing that no title passed by such deed, and * * * cannot estop the grantee from denying the title of the grantor at the date of the deed." 42 Ohio Jurisprudence 3d, Estoppel and Waiver, Section 11.   There is no dispute that Fenwick conveyed the subject real property to Balfour by quit-claim deed.   Moreover, in light of the questions of fact as to the existence of an equitable mortgage and the breach of the renovation agreement by Balfour, the pleadings do not permit a declaration as to the validity of either the Balfour deed or the Bungaplex deed.   The interests of justice require the competing equitable claims be resolved upon the evidence, not on the pleadings.[5]

### b. Ejectment

{¶ 40}   As we have found, the pleadings raise a genuine factual issue as to the validity of the Balfour deed. Consequently, the judgment of ejectment was in error.   Moreover, R.C. 5303.08 provides in relevant part:

> *A person who, without fraud or collusion on his part, obtained title to and is in the quiet possession of lands or tenements, claiming to own them, shall not be evicted or turned out of possession by any person who sets up and proves an adverse and better title, until the occupying claimant, or his heirs, is paid the value of lasting improvements made by the occupying claimant on the land,* or by the person under whom he holds, before the commencement of suit on the adverse claim by which such eviction may be effected, unless the occupying claimant refuses to pay to the party establishing a better title the value of the lands without such improvements, on demand by him or his heirs, when such occupying claimant holds:
>
> (A) Under a plain and connected title, in law or equity, derived from the records of a public office

(Emphasis added.)

---

[5] Balfour argues that the statute of frauds bars appellants from enforcing any mortgage that arose out the renovation contract and deed. Application of the statute of frauds would be premature in this case as it is an affirmative defense which must be specifically pleaded. *Rogers v. Targot Telemarketing Servs.*, 70 Ohio App.3d 689 (10th Dist.1990).

{¶ 41} Haymon is the sole member of Bungaplex. Bungaplex is claiming title to the subject real property pursuant to the Bungaplex deed filed with the Franklin County Recorder. In our view, when construed in appellants' favor, as is required in ruling on a Civ.R. 12(C) motion, the pleadings give rise to a genuine issue of fact whether appellants have been compensated for the value of any lasting improvements made on the land. Consequently, the trial court was precluded by R.C. 5303.08 from granting judgment on the pleadings to Balfour on the ejectment claim.

{¶ 42} For the foregoing reasons, appellants' first and fifth assignments of error are sustained.

## 2. Appellants' Second, Third, and Fourth Assignments of Error

{¶ 43} Because appellants' second, third, and fourth assignments of error challenge the trial court's May 19, 2020 judgment, we shall consider them together. In appellants' third assignment of error, appellants argue that the trial court erred in not construing the affirmative defenses asserted in the answer as counterclaims. We agree.

{¶ 44} Civ.R. 8(C) provides:

> In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, want of consideration for a negotiable instrument, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. *When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court, if justice so requires, shall treat the pleading as if there had been a proper designation.*

(Emphasis added.)

{¶ 45} In *Powell v. Vanlandingham*, 4th Dist. No. 10CA24, 2011-Ohio-3208, ¶ 23, the court of appeals explained the difference between affirmative defenses and counterclaims:

> "The difference between a defense and a counterclaim is that 'the latter is affirmative in nature, and asserts a separate cause of action, while the former serves to preclude recovery by asserting facts that defeat the plaintiff's right to recovery.' *Riley v. Montgomery* (June 30, 1983), Warren App. No. 88,

1983 Ohio App. LEXIS 15944. An affirmative defense generally refers to that which is offered to defeat an action by ' "denying, justifying, or confessing and avoiding the plaintiff's cause of action. It goes to the plaintiff's right and generally would not be considered an independent claim existing against the plaintiff." ' " *BAC Home Loans Servicing, L.P. v. Hall*, Warren App. No. CA2009-10-135, 2010 Ohio 3472, at ¶ 18, quoting *Riley*, quoting *Secrest v. Standard Oil Co.* (1963), 118 Ohio App. 270, 271, 194 N.E.2d 68.

*Id.* at fn. 2:

**{¶ 46}** Appellants' answer to the complaint asserts affirmative defenses of waiver, estoppel, failure of a meeting of the minds, unclean hands, and "*plaintiff is the party in breach of contract not defendant.*" (Emphasis added.) (Answer at 7.) Haymon's affidavit, which was filed by appellants on the same day Balfour filed her Civ.R. 41(A)(2) motion provides in relevant part as follows:

2. I am residing at said real estate. At the moment I am the only person residing there. The property requires up to $15,000 in work at a minimum, before it would have a certificate of occupancy allowing others to be able lawfully to live there.

* * *

5. I will explain this further in a longer affidavit but I wish to inform the Court that the deed I gave to Deborah Balfour was expressly understood between us to be a security instrument for the repayment of money to her and was not understood by either of us to be an absolute deed fully transferring ownership.

6. Deborah and I had a contract, or partnership, or loan agreement regarding the property referenced above and a property at 3104 Twin Circle Street, Moore, Oklahoma 73160. Deborah was to be the money "partner" and I the "work partner". *Deborah breached the agreement by withholding the final $15,000 needed to finish the Ohio property and by maliciously thwarting a sale we had arranged of the Oklahoma property.*

(Emphasis added.)

**{¶ 47}** Based upon the facts pleaded in the complaint and answer, and the additional factual averments in Haymon's affidavit, it is evident that appellants have mistakenly

pleaded a breach of contract as an affirmative defense. The same factual allegations arguably state a claim for monetary relief under R.C. 5303.08, the occupying claimant law.

**{¶ 48}** Under Civ.R. 8(C), "[w]hen a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court, if justice so requires, shall treat the pleading as if there had been a proper designation." *Eaton Corp. v. Taylor-Winfield Corp.*, 8th Dist. No. 62361, 1993 Ohio App. LEXIS 3522 ("The claim for quantum meruit is not barred for failure to set forth a counterclaim, because quantum meruit was mistakenly pleaded as an affirmative defense [and] Civ.R. 8(C) provides that if a counterclaim is mistakenly pleaded as an affirmative defense, the court shall treat the pleading as if there had been a proper designation."); *Powell* at ¶ 23, fn. 2 (In an encroachment action, defenses of estoppel, waiver and acquiescence properly treated as a counterclaim to declare the legal description of a disputed boundary line.); *Northwest Ohio Props. Ltd. v. Cty. of Lucas*, 6th Dist. No. L-17-1190, 2018-Ohio-4239, ¶ 25 (In a trespass action, the defense of a de facto easement was properly treated as a counterclaim to declare the legal description of a disputed boundary line.). When justice so requires, a trial court shall treat an affirmative defense as a counterclaim even though the answer does not contain a demand for relief. *Eaton Corp.* We believe the interests of justice require such treatment in this case because appellants counterclaims are compulsory in nature.

**{¶ 49}** Civ.R. 13(A) identifies compulsory counterclaims as follows:

> (A) Compulsory counterclaims.
>
> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, *if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim* and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

(Emphasis added.)

**{¶ 50}** "To determine whether the claims arise out of the same transaction or occurrence, the courts apply the 'logical relation' test." *Licking Hts. Local School Dist. Bd. of Edn. v. Reynoldsburg City School Dist. Bd. of Edn.*, 10th Dist. No. 12AP-579, 2013-Ohio-3211, ¶ 14, quoting *Rettig Ent., Inc. v. Koehle*, 68 Ohio St.3d 274 (1994). " 'Under the logical relation test: "a compulsory counterclaim is one which is logically related to the opposing

party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts.' " *Licking Hts.* at ¶ 14, quoting *Rettig* at paragraph two of the syllabus. Appellants' counterclaims based on Balfour's alleged breach of the renovation agreement are logically related to the claims Balfour asserted against appellants in her complaint and it is evident that separate trials on each of the respective claims would involve a substantial duplication of effort and time by the parties and the courts. Accordingly, appellants have asserted compulsory counterclaims. *Smith v. Bank of Am.*, 7th Dist. No. 11-MA-169, 2013-Ohio-4321, ¶ 40, citing *Jarvis v. Wells Fargo Bank*, 7th Dist. No. 09 CO 6, 2010-Ohio-3283, ¶ 32.

{¶ 51} As a general rule "[i]f a party fails to file a compulsory counterclaim, he has waived his right to thereafter assert that claim." *Lenihan v. Shumaker*, 9th Dist. No. 12814, 1987 Ohio App. LEXIS 6693 (May 6, 1987), citing *Broadway Mgt., Inc. v. Godale*, 55 Ohio App.2d 49 (9th Dist.1977). Thus, the trial court's failure to treat appellants' affirmative defense as counterclaims unfairly prejudiced appellants' right of recovery in this action or a subsequent action. *Smith* at ¶ 40 (Mortgagor's counterclaims against mortgagee barred by res judicata in subsequent litigation where mortgagor failed to assert them in the foreclosure action.).

{¶ 52} Balfour nevertheless argues appellants waived the Civ.R. 8(C) argument by failing to move the trial court for such a ruling. Our reading of Civ.R. 8(C) belies Balfour's argument, as the rule states the trial court *shall* treat mistakenly designated defenses as a counterclaim if justice so requires. A motion is not required to invoke the rule. The mandatory language of Civ.R. 8(C) is consistent with the language of Civ.R. 8(F) which requires that "[a]ll pleadings shall be so construed as to do substantial justice."

{¶ 53} Moreover, as appellants' have argued in their fourth assignment of error, the trial court violated due process when it granted appellee's Civ.R. 41(A)(2) motion to dismiss, without providing appellants the required notice and opportunity to be heard in opposition to the motion. In *Citibank, N.A. v. Slorp*, 10th Dist. No. 13AP-513, 2013-Ohio-5331, this court set out the applicable rule of law as follows:

> In *Logsdon v. Nichols*, 72 Ohio St. 3d 124, 126, 1995 Ohio 225, 647 N.E.2d 1361 (1995), the Supreme Court of Ohio stated that, "[g]iven the need for trial court action in order to effect the dismissal under Civ.R. 41(A)(2), the opposing party to the action is entitled to be heard on the motion. Failure to afford

> that opportunity can be reversible error." Furthermore, in *Cuervo v. Snell*, 10th Dist. No. 99AP-1442, 2000 Ohio App. LEXIS 4404 (Sept. 26, 2000), we held that " '[h]owever hurried a court may be in its efforts to reach the merits of a controversy, the integrity of procedural rules is dependent upon consistent enforcement because the only fair and reasonable alternative thereto is complete abandonment.' " Id., quoting *Miller v. Lint*, 62 Ohio St.2d 209, 215, 404 N.E.2d 752 (1980). "[I]f a trial court disregards the response time created by the Ohio Rules of Civil Procedure, that court has committed reversible error." *Id.*, citing *Gibson-Myers & Assoc. v. Pearce*, 9th Dist. No. 19358, 1999 Ohio App. LEXIS 5010 (Oct. 27, 1999), following In re Foreclosure of Liens for Delinquent Taxes, 79 Ohio App.3d 766, 771-72, 607 N.E.2d 1160 (2d Dist.1992).

*Id.* at ¶ 8.

**{¶ 54}** In *Chafin v. Ohio Adult Parole Auth.*, 10th Dist. No. 13AP-646, 2014-Ohio-1192, this court noted that "Franklin County, Ohio, Ct. C.P.R. 21.01 requires that answers to motions be filed on or before the fourteenth day after the date of service as set forth on the certificate of service attached to the motion." *Id.* at ¶ 9, citing *Slorp*.

**{¶ 55}** Here, the trial court granted appellee's Civ.R. 41(A)(2) motion just one day after it was filed. Civ.R. 41(A)(2) reads as follows:

> Except as provided in division (A)(1) of this rule, a claim shall not be dismissed at the plaintiff's instance except upon order of the court and upon such terms and conditions as the court deems proper. *If a counterclaim has been pleaded by a defendant prior to the service upon that defendant of the plaintiff's motion to dismiss, a claim shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court.* Unless otherwise specified in the order, a dismissal under division (A)(2) of this rule is without prejudice.

(Emphasis added.)

**{¶ 56}** Appellants' compulsory counterclaims cannot remain pending for independent adjudication by the court. *Smith* at ¶ 40, citing *Jarvis* at ¶ 32. Because the trial court disregarded the response time provided by the rules, appellants did not have the opportunity to object to the dismissal on grounds that their answer contained a counterclaim, as they have in this appeal. The record compels the conclusion that trial court committed reversible error in granting the motion to dismiss.

{¶ 57} For the foregoing reasons, we sustain appellants' third and fourth assignments of error. Having sustained appellants' third and fourth assignments of error, we need not address appellants' second assignment of error claiming the trial court erred in granting Balfour's Civ.R. 41(A)(2) motion to dismiss fewer than all of her claims. Appellants' second assignment of error is moot. App.R. 12(A)(1)(c).

## V. CONCLUSION

{¶ 58} Having sustained appellants' first, third, fourth, and fifth assignments of error, and having found appellants' second assignment of error moot, we reverse the judgments of the trial court and remand the matter to the trial court for further proceedings consistent with this decision.

*Judgments reversed and remanded; motion to strike granted, in part.*

KLATT, J., concurs in part and concurs in judgment.
SADLER, J., concurs in part and dissents in part.

KLATT, J., concurring in part and concurring in judgement.

{¶ 59} I agree with the majority's conclusion that the trial court erred when it granted Balfour's Civ.R. 12(C) motion and entered an order of ejectment. I write separately to express a more narrow legal analysis.[6]

{¶ 60} The majority decision accurately sets forth the Civ.R. 12(C) standard and our de novo standard of review. I see no need to restate the Civ.R. 12(C) standard here. Balfour's Civ.R. 12(C) motion seeks a declaration that her title to the subject property is superior to that asserted by Bungaplex as a matter of law. However, the pleadings do not conclusively establish that Balfour is entitled to such a declaration as a matter of law.

{¶ 61} The pleadings do establish that Haymon, on behalf of Fenwick, executed and gave to Balfour a quit-claim deed to the subject property. However, the pleadings and attachments thereto do not conclusively establish what the parties intended when Balfour received the deed. In paragraph seven of her complaint, without indicating any specific timeframe, Balfour alleged that she is a friend of Haymon, and that she "agreed to loan monies for Defendant Haymon and/or his entities to use to renovate the Subject Property." In paragraph eight of her complaint, Balfour alleged she "loaned Defendant Haymon and/or his entities additional sums for a total of $123,173.00 with the promise that said funds would be utilized to renovate the kitchen and bathroom, among other things, at which point the Subject Property would be sold for a profit, with the loaned funds being returned to plaintiff Balfour, with interest." Balfour alleged Haymon was to repay the loan himself. (July 19, 2019 Compl. at ¶ 10.) Balfour also alleged "[t]o date, Defendant Haymon has made no payments on the loan. Plaintiff Balfour has made all payments due on the loan." *Id.* at ¶ 11. Based solely on her receipt of the quit-claim deed from Fenwick in connection with these loans, Balfour contends that Fenwick no longer had any legal interest in the subject property, and therefore Fenwick could not transfer any title to Bungaplex. *Id.* at ¶ 12, 13, and 17.

{¶ 62} Appellants expressly denied that Fenwick no longer had any right, title, or interest in the subject property when it conveyed the property to Bungaplex. (Nov. 21, 2019 Answer at ¶ 17.) Appellants also expressly denied Balfour's allegation in paragraph 23 of her

---

[6] I also agree with the majority that appellants have standing to bring this appeal.

complaint that "Balfour has a full fee simple absolute interest in the subject property and is entitled to possession and ownership thereof." These denials coupled with Balfour's allegations that she loaned Haymon money for the purpose of renovating the property raise an issue regarding the intention of the parties at the time Balfour received the quit-claim deed. Drawing all reasonable inferences in appellants' favor as the nonmoving party, as we must under Civ.R. 12(C), I construe appellants' answer as contesting Balfour's legal title to the property and alleging that Balfour's receipt of the quit-claim deed was intended to secure the Balfour loans, not to immediately convey legal title to the property. Therefore, appellants' answer suggests that Fenwick retained legal title to the property and could subsequently convey the property to Bungaplex. This is precisely the argument appellants made in opposing Balfour's motion for judgment on the pleadings.

{¶ 63} Under Ohio law, "in order for a deed to be operative as a transfer of ownership of land or an interest or any estate therein, there must be a delivery of the instrument. It is the delivery that gives the instrument force and effect. Delivery imports transfer of possession or the right to possession of the instrument with the intent to pass title as a *present* transfer. It is essential to delivery that there not only be a voluntary delivery, but there must be also an acceptance thereof on the part of the grantee, *with the mutual intention of the parties to pass title to the property described in the deed.*" (Emphasis added.) *Kniebbe v. Wade*, 161 Ohio St. 294, 297 (1954); *Welsh v. Estate of Cavin*, 10th Dist. No. 02AP-1328, 2004-Ohio-62, ¶ 22-23 (execution and delivery of quit-claim deed require mutual intent to convey the property to effectuate a transfer of title); *Candlewood Lake Assn. v. Scott*, 10th Dist. No. 01AP-631 (Dec. 27, 2001) ("[a]n effective delivery, however, also requires an acceptance on the part of the grantee, coupled with the mutual intent of the parties to pass title to the property described in the deed." Citing *Kniebbe*.

{¶ 64} Here, the pleadings do not establish that the Balfour deed was delivered "with the mutual intent of the parties to pass title to the property described in the deed." Therefore, the trial court erred in granting Balfour's motion for judgment on the pleadings declaring that Balfour has the superior legal interest in the property.

{¶ 65} Nor do the pleadings establish as a matter of law that the doctrine of estoppel by deed precludes Fenwick from alleging that it possessed legal title when it conveyed the property to Bungaplex. As noted in the majority decision, it is well-established that a mere

quit-claim deed, without conveyance of warranty, does not estop the grantor from showing that no title passed by such deed. 42 Ohio Jurisprudence 3d, Estoppel and Waiver, Section 11 (1983). A grantor of a quit-claim deed may contest the validity of the delivery by arguing that the parties did not intend to pass title to the property described in the deed. *Welsh* (summary judgment reversed because evidence presented in opposition to summary judgment raised a material issue of fact regarding the intent of the parties in executing the quit-claim deeds).

{¶ 66} When the issue is whether receipt of a quit-claim deed constitutes a present conveyance of property, applying the principle of estoppel by deed would conflict with the requirement that effective delivery of a deed requires a voluntary delivery, acceptance thereof on the part of the grantee, with the mutual intention of the parties to pass title to the property described in the deed. *Kniebbe*; *Welsh*. Here, the pleadings do not establish as a matter of law the application of the doctrine of estoppel by deed.

{¶ 67} Because the trial court erred in granting Balfour's motion for judgment on the pleadings declaring that Balfour has the superior legal interest in the property, the trial court's judgment on the ejectment claim is also in error. Until it is determined who has the superior legal interest in the subject property, Balfour cannot establish she is entitled to relief under R.C. 5303.03.

{¶ 68} I also agree that the trial court erred in granting Balfour's Civ.R. 41(A)(2) motion to dismiss her remaining claims without giving appellants an opportunity to respond. *Citibank, N.A. v. Slorp*, 10th Dist. No. 13AP-513, 2013-Ohio-5331, ¶ 8 (" 'given the need for trial court action in order to effect the dismissal under Civ.R. 41(A)(2), the opposing party to the action is entitled to be heard on the motion. Failure to afford that opportunity can be reversible error' "), quoting *Logsdon v. Nichols*, 72 Ohio St.3d 124, 126 (1995).

{¶ 69} Appellants have argued that they were prejudiced by the trial court's failure to give them an opportunity to respond to Balfour's Civ.R. 41(A)(2) motion. According to appellants, this failure denied them the opportunity to argue that their answer contained a mislabeled counterclaim for breach of contract, as they have argued on appeal. Without agreeing or disagreeing with appellants' contention that their answer contains a mislabeled counterclaim, I nevertheless agree with the majority that the trial court erred by granting Balfour's Civ.R. 41(A)(2) motion without giving appellants the opportunity to respond.

SADLER, J., concurring in part and dissenting in part.

{¶ 70} I respectfully dissent from the majority's conclusion that Fenwick Associates, LLC, and Bungaplex, LLC, are parties to this consolidated appeal. Notwithstanding that disagreement, I agree with the majority that Haymon has standing to appeal the declaratory judgment ruling and that the trial court's judgments must be reversed and remanded. Because I would join Judge Klatt's more narrow legal analysis for the reasons set forth below, I concur with the concurring decision on the first and fifth assignments of error, concur with the majority's resolution of the second and fourth assignments of error, and dissent on the third assignment of error.

## A. Whether Fenwick and Bungaplex are parties to the appeal

{¶ 71} The majority concludes that the term "et al." in the caption of the notices of appeal filed by Haymon was sufficient to identify Fenwick and Bungaplex as parties appealing from the trial court judgments. I respectfully disagree.

Under App.R. 3(D), "the notice of appeal shall specify the party or parties taking the appeal." Citing *Transamerica Ins. Co. v. Nolan*, 72 Ohio St.3d 320 (1995) and *Grand Council of Ohio v. Owens*, 86 Ohio App.3d 215 (1993), the majority correctly notes that the Supreme Court of Ohio and this court have held that use of the term "et al." in a notice of appeal does not deprive an appellate court of jurisdiction over an appeal by a party not specifically named in the notice of appeal. The majority's analysis, however, disregards a key difference between those cases and the present appeal.

{¶ 72} The notice of appeal from the trial court judgment in *Transamerica* designated the appealing parties as "Dennis Wallace et al." *Transamerica* at 321. The court of appeals held that it lacked jurisdiction to consider Linda Wallace's appeal because the term "et al." was insufficient to designate unnamed plaintiffs as appealing parties under App.R. 3. *See Transamerica Ins. Co. v. Nolan*, 12th Dist. No. CA93-04-035 (Nov. 22, 1993). The Supreme Court of Ohio reversed, finding that the "Dennis Wallace et al." designation was sufficient to apprise the parties of Linda Wallace's interest in the appeal. *Transamerica*, 72 Ohio St.3d 320 at 321-23. Therefore, the Supreme Court concluded, the court of appeals abused its discretion by failing to consider Linda Wallace's appeal. *Id.* at 322-23. This court previously reached the same conclusion in *Grand Council*, holding that designating the appellants as "The Grand Council of Ohio, The Order of United Commercial Travelers of

America, et al." did not deprive the court of jurisdiction over the appeal of any of the other plaintiffs in that case. *Grand Council of Ohio* at 218-19.

{¶ 73} In both *Transamerica* and *Grand Council*, the use of "et al." to identify the parties appealing the trial court's decision was contained in both the caption and the *body* of the notice of appeal. *See Transamerica*, 72 Ohio St.3d 320 at 321 ("The notice of appeal filed in the court of appeals designated the appellants as 'Dennis Wallace et al.' "); *Grand Council* at 218 ("[T]he original notice of appeal * * * stated in pertinent part that '[n]otice is hereby given that The Grand Council of Ohio, The Order of United Commercial Travelers of America, et al. (the 'plaintiffs' herein), hereby appeal * * *.' "). By contrast, in the present case the term "et al." was used only in the *caption* of the notices of appeal. The body of each notice of appeal expressly states "Joseph Virgil Haymon, Defendant in the above-captioned case, respectfully gives Notice that *he* hereby appeals * * *." (Emphasis added.) (June 15, 2020 Notice of Appeal; June 18, 2020 Notice of Appeal.) The notices of appeal also refer to Haymon's counsel as "Attorney for Defendant Joseph Virgil Haymon," with no mention of either Fenwick or Bungaplex. (June 15, 2020 Notice of Appeal; June 18, 2020 Notice of Appeal.) Under similar circumstances, the First District Court of Appeals concluded in a recent decision that the use of "et al." in the caption of a notice of appeal was insufficient to designate a corporate entity as an appellant:

> Here, there is no defect on the face of the notice of the appeal. The caption of the notice of appeal states: "Torbeck Industries, et al" plaintiffs. The body of the notice of appeal, however, designates only Richard Torbeck as the appellant and does not use the term "et al.," as did the notices of appeal in *Transamerica* and *Grand Council*. The notice of appeal also lists counsel as attorneys for the appellant (singular). Because Torbeck Industries is not designated as an appellant in the notice of appeal, it is not a party to this appeal.

*Torbeck v. Indus. Mfg. Co.*, 1st Dist. No. C-140533, 2015-Ohio-3041, ¶ 15. I agree with the First District's reasoning that the use of "et al." in the caption of a notice of appeal is insufficient to designate an individual or entity not named in the body of the notice of appeal as a party to the notice of appeal.

{¶ 74} The majority also notes that Haymon is the sole member of both Fenwick and Bungaplex, and therefore may act on behalf of those entities. The majority further finds no prejudice to Balfour by treating Fenwick and Bungaplex as appellants because the parties

stipulated in the trial court that Haymon's answer to the complaint also served as the answer for Fenwick and Bungaplex. "A corporation is a distinct legal entity, separate and apart from the natural individuals who formed it." *Nu-Trend Homes v. Law Offices of DeLibera, Lyons & Bibbo*, 10th Dist. No. 01AP-1137, 2003-Ohio-1633, ¶ 38. This court has expressly held that "[a] corporation is a separate legal entity from its shareholders, *even where there is but one shareholder*." (Emphasis added.) *Koch v. Lind*, 121 Ohio App.3d 43, 49 (10th Dist.1997), quoting *LeRoux's Billyle Supper Club v. Ma*, 77 Ohio App.3d 417, 420 (6th Dist.1991). Moreover, the fact that there was a question at the trial level whether Haymon's answer to the complaint also covered Fenwick and Bungaplex should have put Haymon and his counsel on notice that the corporate entities were distinct actors in the proceedings.

{¶ 75} Because the notices of appeal in this case only designate Haymon as the appealing party, I would not find that Fenwick and Bungaplex are parties to this appeal and, accordingly, I dissent from this portion of the majority decision.

**B.  Whether Haymon has standing to appeal the declaratory judgment ruling**

{¶ 76} Despite concluding that Fenwick and Bungaplex are not parties to this appeal, I agree with the majority's conclusion that, under the circumstances of this case, Haymon has standing to appeal the trial court's decision on Balfour's declaratory judgment claim.

{¶ 77} Balfour's complaint alleged that Fenwick acquired title to the property on or about September 12, 2014, pursuant to a quit-claim deed. Fenwick then issued a quit-claim deed on or about April 26, 2017, conveying the property to Balfour. Fenwick subsequently issued a quit-claim deed conveying the property to Bungaplex on or about August 29, 2017. There is no assertion that Haymon ever held title to the property in his individual capacity. In her declaratory judgment claim, Balfour requested that the trial court declare her deed to be valid and Bungaplex's deed to be invalid. The trial court granted Balfour's motion for judgment on the pleadings as to her declaratory judgment claim, ruling that her deed was valid and Bungaplex's deed was invalid. Balfour asserts that Haymon lacks standing to appeal the declaratory judgment ruling because he does not have an individual ownership interest in the subject property.

{¶ 78} "Under the common law, it is well settled that the right to appeal can be exercised only by those parties who are able to demonstrate a present interest in the subject

matter of the litigation which has been prejudiced by the judgment of the lower court." *Willoughby Hills v. C.C. Bar's Sahara*, 64 Ohio St.3d 24, 26 (1992). " 'Appeal lies only on behalf of a party aggrieved by the final order appealed from.' " *Id.*, quoting *Ohio Contract Carriers Assn., Inc. v. Pub. Util. Comm.*, 140 Ohio St. 160 (1942), syllabus. "The appellant must show that its rights have been adversely affected by the trial court's judgment in order for him to be an aggrieved party and for an appeal to lie." *Tschantz v. Ferguson*, 49 Ohio App.3d 9, 13 (10th Dist.1989).

{¶ 79} "Generally, a party does not have standing to prosecute an appeal to protect the rights of a third party." *Wells Fargo Bank, N.A. v. Kessler*, 10th Dist. No. 15AP-216, 2015-Ohio-5085, ¶ 23. Haymon does not have an individual ownership interest in the subject property and was not a party to the Balfour Deed or the Bungaplex Deed in his individual capacity. Haymon is the sole member of Fenwick and Bungaplex but, as explained above, those are separate legal entities. *Koch*, 121 Ohio App.3d 43 at 49. Thus, as an individual, Haymon lacks a "present interest" in the Bungaplex Deed that has been prejudiced by the declaratory judgment ruling. However, under the circumstances in this case, our analysis cannot end there.

{¶ 80} Balfour's declaratory judgment claim was coupled with an ejectment claim. Ejectment requires a plaintiff to establish "that he has a legal estate [in real property] and is entitled to the possession thereof, describing it with such certainty as to identify the property, and that the defendant unlawfully keeps him out of the possession." R.C. 5303.03; *see also Liberty Self-Stor, Ltd. v. Porter*, 2d Dist. No. 21699, 2007-Ohio-1510, ¶ 20 ("Ejectment is the proper remedy against one wrongfully in possession of real property. Ejectment is available where the plaintiff has a legal title and is entitled to the possession of the real property but is unlawfully kept out of the possession by the defendant."). Haymon admitted in his answer that he resided at the property. Therefore, the key question before the trial court was whether Balfour had legal title and was entitled to possession of the subject property. In granting Balfour's ejectment claim, the trial court relied on its declaratory judgment ruling:

> *As shown in the declaratory judgment analysis*, Plaintiff Balfour has a legal estate in the real property and a possessory right through the Balfour Deed. The identity of the real property has been established with certainty in the Balfour Deed and Plaintiff's Complaint which provided the Subject

> Property's physical address and Franklin County Permanent Parcel Number. Defendants have kept Plaintiff Balfour from possessing the real property by Defendant Haymon residing at the Subject Property when he has no legal right to do so. Thus, the statutory requirements have been satisfied and Plaintiff Balfour is entitled to judgment on the pleadings.

(Emphasis added.) (Mar. 16, 2020 Decision & Entry at 6.) Balfour does not challenge Haymon's standing to appeal the trial court's ruling on her ejectment claim.

{¶ 81} Under these circumstances, where the trial court's ruling on the ejectment claim and Haymon's right to occupy the subject property necessarily flowed from its ruling on the declaratory judgment claim, Haymon was an "aggrieved party" whose rights were adversely affected by the declaratory judgment ruling. *See Tschantz*, 49 Ohio App.3d 9 at 13. Therefore, Haymon has standing to appeal the trial court judgment on the declaratory judgment claim.

## C. Whether Balfour was entitled to judgment on the pleadings

{¶ 82} In his first and fifth assignments of error, Haymon challenges the trial court's judgment granting Balfour's motion for judgment on her declaratory judgment and ejectment claims. "A motion for judgment on the pleadings is to be granted when, after viewing the allegations and reasonable inferences therefrom in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law." *Kamnikar v. Florita*, 10th Dist. No. 16AP-736, 2017-Ohio-5605, ¶ 35. As Judge Klatt's concurrence explains, the pleadings in this case do not conclusively establish that Balfour was entitled to declaratory judgment or relief on her ejectment claim under R.C. 5303.03 as a matter of law. Accordingly, I would sustain Haymon's first and fifth assignments of error. However, because I believe the narrow analysis presented in Judge Klatt's concurrence is the proper course, I differ with the reasoning of the lead opinion on these assignments of error and respectfully concur with the reasoning set forth in the concurring opinion.

## D. Whether the trial court erred by granting Balfour's motion to dismiss her remaining claims

{¶ 83} In his fourth assignment of error, Haymon asserts the trial court erred by summarily granting Balfour's motion to dismiss without giving him an opportunity to respond. After the trial court granted her motion for judgment on the pleadings on the

declaratory judgment and ejectment claims, Balfour moved to dismiss the remainder of her claims under Civ.R. 41(A)(2). That rule states that, except as provided in Civ.R. (A)(1), "a claim shall not be dismissed at the plaintiff's instance except upon order of the court and upon such terms and conditions as the court deems proper." The Supreme Court of Ohio has held that "[g]iven the need for trial court action in order to effect [a] dismissal under Civ.R. 41(A)(2), the opposing party to the action is entitled to be heard on the motion. Failure to afford that opportunity can be reversible error." *Logsdon v. Nichols*, 72 Ohio St.3d 124, 127 (1995). In this case, Balfour filed her motion to dismiss on May 18, 2020. The trial court granted the motion the following day. Because Haymon was not afforded an opportunity to respond to Balfour's motion, I would sustain Haymon's fourth assignment of error. Having sustained Haymon's fourth assignment of error, I would find his second and third assignments of error to be moot. The majority finds the second assignment of error moot but reaches the merits of Haymon's third assignment of error. Therefore, I concur with the majority as to the second and fourth assignments of error but dissent as to the third assignment of error, because I deem it moot.

_____