[Cite as *NW Ohio Servs. III, L.L.C. v. Thames*, 2024-Ohio-5307.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

NW Ohio Services III, LLC                    Court of Appeals No.  L-24-1036

    Appellee

                                        Trial Court No.  CVG023008228

v.

Leah Thames                                  **DECISION AND JUDGMENT**

    Appellant                                Decided:  November 1, 2024

* * * * *

Kelly S. O'Brien and Taylor N. Burns, for appellant.

* * * * *

**ZMUDA, J.**

{¶ 1} Appellant, Leah Thomas, appeals the January 19, 2024 order of the Toledo Municipal Court entering judgment in favor of appellee, NW Ohio Services III, LLC in the amount of $3549.19, for unpaid rent, late fees, and unpaid water bills.  For the following reasons, we affirm.

## I.  Background

{¶ 2} On June 21, 2023, appellee filed a complaint in forcible entry and detainer in Toledo Municipal Court against appellant asserting that appellant had entered into a

written lease, attached as an exhibit, for property owned by appellee[1] that was located at 5353 306th St., Toledo, Ohio. Appellee further alleged that appellant had failed to pay rent and late fees. Accordingly, appellee sought "process and restitution of the premises," money damages for unpaid rent, late fees, and damages to the property.

{¶ 3} On July 17, 2023, the trial court held an eviction hearing. Following the hearing, the trial court adopted the magistrate's decision granting appellee possession of the property and ordering a set-out eviction, to be stayed until August 1, 2023. The trial court's docket reflects that on August 15, 2023, an eviction was scheduled for August 28, 2023. On that date, the eviction was cancelled and rescheduled for September 7, 2023. The trial court's record indicates that on September 7, 2023, an agreement had been reached between the parties and the locks had been changed.

{¶ 4} On September 11, 2023, appellant filed an answer admitting the following: appellee owned the property, the lease attached to the complaint was correct, and appellee had served notice. Appellee's answer otherwise denied appellee's claims. In addition, appellant asserted two affirmative defenses: (1) her security deposit had not been returned and appellee had not provided an accounting of appellee's use of the security deposit; and (2) Clarence Liggons, whom appellee identified as her "co-tenant," still occupied the property and therefore damages could not be assessed. Appellant also

---

[1] The complaint states that appellee is the owner of the property at issue, but the lease agreement attached to the complaint and the testimony at trial identify Brian Habegger as the landlord. The trial court's record does not contain any mention of Habegger's relationship to appellee. However, because the landlord's identity is not a subject of this appeal, we will not address this inconsistency.

2.

filed a counterclaim asserting that she had paid a security deposit, appellee had not returned the deposit, and appellee had not provided a ledger evidencing how the deposit had been allocated. Finally, citing R.C. 1923.061, appellant claimed to reserve her right to assert additional defenses or counterclaims at trial.

{¶ 5} The trial court held a bench trial on January 11, 2024. At trial, appellee called a single witness on its behalf, Lindsey Little, a property manager with Serenity Property Management. According to Little, the property owner retained Serenity Property Management to manage the property, including collecting rent. With respect to the lease agreement, Little pointed out that only appellant was identified as a tenant on the lease's first page. Little did, however, note that on the signature lines on the lease's last page, Brian Habegger signed as landlord, and both appellant and Clarence Liggons signed as lessee. At the conclusion of the lease agreement, appellant and Clarence Liggons signed separate lines designated "lessee."

{¶ 6} Regarding the eviction, Little testified that she, a four-person crew from Serenity, and the bailiffs went to the property on August 28, 2023, the date scheduled for the set-out eviction. When they arrived, no one answered the door, but she could hear a television and dogs barking inside the home. They waited for a while and then knocked again, and this time they did not hear dogs barking or the television, but again, no one answered. Accordingly, they began drilling the locks on the front door, and as they were doing so, Liggons arrived in his vehicle in the driveway. As Liggons was talking with the bailiffs, appellant came out of the back door. Little testified that appellant and

3.

Liggons said they did not have a way to remove their belongings—though appellant also claimed to not have any belongings at the property—and so Little coordinated to come back a week later, on September 7, 2023, to change the locks. Little testified that on September 7, 2023, Liggons removed the items he wanted to keep and left many items—including dishes and furniture—behind at the premises. Little did not mention whether appellant was present at the property on September 7.

{¶ 7} When cross-examined about appellant's move-out date, Little testified as follows:

Q. Okay. That's fine. So you're not aware of when my client moved out?
A. No.
Q. You did say that you knew Clarence was still living there?
A. Per – per what she had told me, yes.
Q. Okay.
A. But as I stated, when we arrived, she was the party inside the home.
Q. Okay.
A. So she may have told us that she moved out, but she was present and inside the home when we arrived.

{¶ 8} Little also testified, with the aid of a ledger that was admitted as an exhibit, regarding the unpaid rent, water bills, and late fees from May 2023 to September 2023. According to Little, appellant owed appellee $4,299.19 in rent, utility bills, and late charges for that period.

{¶ 9} Next, appellant testified. During her testimony, appellant said that she and Liggons were co-tenants, and Habegger knew that she and Liggons intended to lease the property together as roommates. Appellant testified that she moved out of the property on July 31, 2023 and Liggons remained in the house after she moved out.

4.

{¶ 10} Appellant also testified that throughout the two years of her tenancy, the property was in significant disrepair. Specifically, the property had a pervasive mouse infestation, the furnace did not work and instead she was given space heaters, there were holes in one of the rooms due to the mice, the roof was falling down on one side, and she had to keep a bucket under the kitchen sink because the drain did not work. Appellant testified that she brought these issues to Habegger's attention, and he hired someone to address some of the issues, but they were never resolved. Because of the significance of these issues, appellant testified that she did not feel she was getting the full rental value of the house. She explained that she did not pay rent into escrow because she did not have the money to do so and because she was behind on her rent when she learned about the possibility of paying her rent into escrow.

{¶ 11} Next, Liggons testified on appellant's behalf. Liggons provided additional testimony of the property's disrepair from the first day they saw the property prior to signing the lease, stating that Habegger had promised—but failed—to repair the property. Liggons also testified that appellant moved out of the property in July 2023.

{¶ 12} The parties made no closing arguments. During the hearing, appellant never moved to assert a counterclaim for breach of the lease or rent abatement based on the property's condition. Likewise, at no other time during the case's pendency in the trial court did appellant move to amend her answer or seek leave to file an additional counterclaim asserting that appellee had breached the lease or seeking rent abatement.

5.

{¶ 13} On January 17, 2024, the trial court issued an order entering judgment in favor of appellee for $3,549.19.  The amount of the judgment was the total of the unpaid rent, late fees, and unpaid water bills, from which the $750 security deposit was subtracted.  Regarding what the trial court characterized as appellant's counterclaims, the trial court held as follows:

> [T]he alleged lack of compliance with []R.C. 5321.16 would nullify [appellant's] counterclaim as to the security deposit.  Furthermore, [appellant's] alleged claim for rent abatement due to the condition of the premises is offset by the fact that [appellant] did not enter into rent escrow, a fact which according to [appellant], is because [appellant] was not current on rent, which further moves [appellee's] claim for past due rent forward.

Appellant filed a timely appeal of the order along with a merit brief.  Appellee has not filed a brief or otherwise appeared in this appeal.

## II.  Assignments of Error

{¶ 14} Appellant appeals the trial court's order granting judgment in favor of appellee, asserting the following assignments of error:

1. The trial court erred as a matter of law by finding that Ms. Thames claims for rent abatement are offset by her failure to file rent escrow.
2. The trial court erred in finding Ms. Thames responsible for rent, late fees, and water bills after she vacated the unit because Landlord failed to mitigate its damages.

## III.  Law and Analysis

### A. Rent Abatement

{¶ 15} In her first assignment of error, appellant alleges that the trial court incorrectly determined that the procedure set forth in R.C. 5321.07 permitting a tenant to

6.

place rent into escrow was the only avenue for her to assert that she did not receive the full rental value of the property. Appellant alleges that she could pursue her claims regarding appellee's failure to repair the property without escrowing her rent, citing *Miller v. Ritchie*, 45 Ohio St.3d 222, 225 (1989) for support. Again, appellee did not file a brief addressing appellant's arguments.

{¶ 16} Appellant is correct that a tenant may seek rent abatement in a common-law action outside the escrow mechanism set forth in R.C. 5321.07. *Miller v. Ritchie*, 45 Ohio St.3 222, 225 (1989). R.C. 5321.04(A)(1) imposes a statutory duty for landlords to maintain leased premises that did not exist at common law. *Id.* at 224. One mechanism for a tenant to assert a claim for the landlord's breach of that duty is to escrow rent pursuant to R.C. 5321.07, but R.C. 5321.07 does not provide the exclusive remedy. *Id.* at 225. "Although risking eviction, a tenant who withholds but does not escrow rent does not waive the right to recover damages caused by a landlord's breach of duty." *Id.* at 225. Accordingly, the trial court erred in holding that appellant was required to place her rent in escrow before she could assert a claim against appellee for rent abatement based on appellee's breach of its duty to maintain the leased premises.

{¶ 17} But our analysis does not end there. Even if appellant could assert her claim for rent abatement despite her failure to place her rent into escrow, she failed to properly assert that right in the trial court as a counterclaim. Her arguments on appeal

7.

frame rent abatement as a defense or offset to the appellee's claim for unpaid rent,[2] but appellant conflates a defense with a counterclaim, which are not the same. As explained more fully below,

> The difference between a defense and a counterclaim is that the latter is affirmative in nature, and asserts a separate cause of action, while the former serves to preclude recovery by asserting facts that defeat the plaintiff's right to recovery. An affirmative defense generally refers to that which is offered to defeat an action by denying, justifying, or confessing and avoiding the plaintiff's cause of action. It goes to the plaintiff's right and generally *would not be considered an independent claim* existing against the plaintiff.

*Balfour v. Haymon*, 2021-Ohio-3499, ¶ 45 (10th Dist.) (cleaned up) (emphasis added). Put another way, "[a counterclaim] assumes the existence of the plaintiff's claim, and seeks relief by way of a cross demand," whereas a defense attacks the merits of the plaintiff's claim. *Natl. City Bank v. Mulinex*, 2005-Ohio-5460, ¶ 20 (6th Dist.), quoting *Cambridge Prod. Credit Assn. v. Shaner* (May 8, 1987), 5th Dist. No. CA-351.

{¶ 18} Appellant does not dispute the existence of a valid lease with appellee, nor does she dispute that she failed to pay the rent due under the lease. Nonetheless, she characterizes her testimony regarding the poor condition of the property as supporting a defense to the landlord's claim for unpaid rent or an offset the landlord's damages. However, rent abatement must be asserted as a tenant's claim or counterclaim, not as a defense to a landlord's action seeking unpaid rent, because its basis—the landlord's

---

[2] Although her answer purported to reserve her rights under R.C. 1923.061 to later assert counterclaims and defenses, appellant has not made any arguments regarding the application of R.C. 1923.061 to her claim for rent abatement.

8.

breach of its duty to maintain the property—is an independent claim that may exist even if the landlord never files an action. *See, e.g., Heck v. Whitehurst Co.*, 2004-Ohio-4366 (6th Dist.) (tenant's claim for rent abatement due to problems with apartment initiated when tenant filed an application for tenant rent escrow); *Paradise 4U Properties, Ltd. v. Clark*, 2016-Ohio-3269 (10th Dist.) (after landlord filed suit for nonpayment of rent, tenant filed a counterclaim seeking rent abatement); *Holman v. White Pond Villa Apts,*, 2023-Ohio-2221 (9th Dist.) (tenant initiated proceedings for rent abatement and sought to escrow rent after landlord failed to make repairs to apartment). Indeed, R.C. 1923.061 provides that in a forcible entry and detainer action, "the tenant or resident may *counterclaim* for any amount the tenant or resident may recover under the rental agreement or under Chapter 4781. or 5321. of the Revised Code." (emphasis added). Accordingly, to seek rent abatement, appellant must have filed her own claim or counterclaim against appellee.

{¶ 19} To assert a claim or counterclaim, a party must follow the procedure set forth in Civ.R. 8(A):

> a pleading that sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled.

Here, appellant filed a single pleading, her answer, which contained no allegations regarding the condition of the property or otherwise relating to a claim for rent abatement or offset, nor did she include a demand for judgment for the lessened value of the

9.

property.[3]  Accordingly, appellant's claim for rent abatement was not properly before the trial court.

{¶ 20} Therefore, we find that the trial court correctly denied appellant's claim seeking rent abatement, albeit relying on the wrong rationale.  "[T]his court will not reverse a trial court decision 'that achieves the right result for the wrong reason, because such an error is not prejudicial.'"  *State v. Shabaa*, 2022-Ohio-2437, ¶ 26 (6th Dist.), quoting *Brown v. State*, 2019-Ohio-4376, ¶ 41 (6th Dist.).  Because appellant never filed a claim seeking rent abatement due to appellee's breach of its duty to maintain the property, appellant could not be awarded damages for any such breach, and appellant's first assignment of error is found not well-taken.

## B.  Appellee's Failure to Seek Rent from Liggons

{¶ 21} In appellant's second assignment of error, she argues appellee did not mitigate its damages because appellee failed to name Liggons as an additional defendant. She contends the trial court should have "reduce[d] [appellant's] damages by removing August and September rent, late fees, and water bills."  She asserts the trial court's decision is against the manifest weight of the evidence.  Specifically, appellant contends that Liggons was a tenant under the lease because he signed the lease as a lessee, he continued to occupy the premises after appellant vacated the property on July 31, 2023,

---

[3] Again, although appellant's answer asserted a general right to assert counterclaims in the future pursuant to R.C. 1923.061, she made no arguments that statute in the trial court or on appeal. Even if she had, R.C. 1923.061 only permits a defendant to raise defenses for the first time at trial, not counterclaims. *See Suburban Realty L.P. v. MD Vape & Tobacco, LLC*, 2023-Ohio-3198, ¶ 76-77 (12th Dist.).

10.

and therefore, to mitigate its damages, appellee was required to name Liggons as a defendant along with appellant in its forcible entry and detainer action to compel him to vacate the property as well.

{¶ 22} We apply the same standard of review for manifest weight in a civil case as in a criminal case. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 17. "We will not reverse a judgment as against the manifest weight of the evidence if it is supported by some competent, credible evidence." *Dayal v. Lakshmipathy*, 2020-Ohio-5441, ¶ 26 (6th Dist.), quoting *Sullinger v. Sullinger*, 2019-Ohio-1489, ¶ 41 (6th Dist.).

{¶ 23} Under a manifest-weight standard of review, we are "deferential to the trial court because 'the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page.'" *Marlowe v. Marlowe*, 2023-Ohio-1417, ¶ 134 (6th Dist.), quoting *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997). "The finder of fact [is] the sole judge of the weight of the evidence and the credibility of the witnesses [and] may believe or disbelieve all, part, or none of a witness's testimony." *State v. Chambers*, 2024-Ohio-3341, ¶ 199 (6th Dist.), citing *State v. Caudill*, 2008-Ohio-1557, ¶ 62 (6th Dist.), citing *State v. Antill*, 176 Ohio St. 61, 67 (1964). Indeed, "[i]n weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Eastley* at ¶ 19. "Where there is a conflict in the evidence, we cannot substitute our view for that of the trier [of fact], except where the decision is completely wrong." *Williamson v. Tucker*, 2022-Ohio-1536, ¶ 10 (6th Dist.), quoting *Tinney v. Tite*, 2012-Ohio-2347, ¶ 10 (6th Dist.)

11.

**{¶ 24}** Here, in support of her contention that she moved out in July, appellant points to her own testimony that she vacated the property on July 31, 2023 pursuant to an agreement with an employee of Serenity Property Management. Appellant also notes that Little testified that before she arrived at the property for the set-out eviction on August 28, appellant had told Little in a phone call that she had already moved out of the property. Finally, appellant points out that Liggons also testified that appellant moved out of the property on July 31, 2023.

**{¶ 25}** However, appellant ignores conflicting evidence presented at trial. Little denied that there was any agreed move-out date between appellee and appellant. Although Little confirmed that in a phone call before the set-out date of August 28, appellant told Little she had already moved out, Little also testified that she could not say whether appellant had actually moved out then, noting that appellant—and not Liggons— was inside the premises when Little and the bailiffs arrived at the property for the set-out eviction.

**{¶ 26}** As the finder of fact, the trial court was in the best position to weigh the credibility of the witnesses and resolve any conflicts in their testimony. Further, unless a lease expressly provides otherwise, co-tenants are jointly liable for rent and other obligations under a lease. *See Dutro v. Meerdink*, 2012-Ohio-2316, ¶ 26 (8th Dist). Therefore, even if appellant and Liggons were co-tenants as appellant claims, we cannot say that the trial court's decision finding appellant liable for the entire amount of

12.

appellee's damages was "completely wrong" and thus against the manifest weight of the evidence. Appellant's second assignment of error is found not well-taken.

### IV. Conclusion

{¶ 27} For the foregoing reasons, the January 19, 2024 judgment of the Toledo Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Gene A. Zmuda, J.                       _____
                                                         JUDGE
Myron C. Duhart, J.

Charles E. Sulek, P.J.                  _____
CONCUR.                                          JUDGE

                                        _____
                                                         JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.